OSIRIS ENTERPRISES and Antonio F. Moscatiello, Appellants

v.

BOROUGH OF WHITEHALL, Harold L. Berkoben, individually and as an official of the Borough of Whitehall, Kathleen N. DePuy, individually and as an official of the Borough of Whitehall, Philip J. Lahr, individually and as an official of the Borough of Whitehall, Robert J. McKown, individually and as an official of the Borough of Whitehall, Glenn P. Nagy, individually and as an official of the Borough of Whitehall, Andrew Sakmar, individually and as an official of the Borough of Whitehall, Adam J. Barone, individually and as an official of the Borough of Whitehall, James F. Nowalk, individually and as an official of the Borough of Whitehall, Linda J. Book, individually and as an official of the Borough of Whitehall, Jahn A. Wotus, individually and as an official of the Borough of Whitehall, Thomas Ozemo, individually and as an official of the Borough of Whitehall, James R. Duffy, individually and as an official of the Borough of Whitehall, Ruthann Omer, individually and as an official of the Borough of Whitehall, James E. Leventry, individ-

ually and as an official of the Borough of Whitehall, Thomas Hudzema, individually and as an official of the Borough of Whitehall and Marilyn F. Moore, individually and as an official of the Borough of Whitehall.

Commonwealth Court of Pennsylvania.

Argued May 3, 2005.
Decided June 23, 2005.

See also 848 A.2d 1071.

Arnold Y. Steinberg, Pittsburgh, for appellant.

Christian D. Marquis, Pittsburgh, for appellees.

BEFORE: SMITH–RIBNER, Judge, and FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Osiris Enterprises (Osiris) and Antonio F. Moscatiello (Moscatiello), (together, Plaintiffs), appeal from the May 27, 2004,

order of the Court of Common Pleas of Allegheny County (trial court), which sustained the preliminary objections filed by the Borough of Whitehall (Borough), *et al.*, (collectively, Defendants) to Plaintiffs' Second Amended Complaint and dismissed with prejudice all counts against various defendants,[1] all of whom are past or present members of the Borough Council, pursuant to the doctrine of high public official immunity.

The facts alleged in Plaintiffs' Second Amended Complaint are summarized very briefly as follows. Osiris is a construction company doing business in Pennsylvania and owned by Moscatiello. In 1995, a dispute arose in connection with work performed by Osiris pursuant to a 1993 construction contract with the Borough. The parties settled the matter out-of-court without any finding or admission of fault on Plaintiffs' part, and, pursuant to the settlement, the Borough agreed to take no further legal or other actions against Plaintiffs arising out of the 1993 contract.[2]

Nevertheless, during an August 1, 2001, Borough Council meeting, Council did not award Osiris a contract for the Borough's "Oakdale Drive Project," even though

Osiris was the lowest qualified bidder. Instead, Council extended the bidding period on the Oakridge Drive Project, eventually re-bid the Project and prohibited Osiris from submitting a second bid.[3] At that same Borough Council meeting, Councilman Robert McKown made a motion, seconded by Councilman Andrew Sakmar, to declare Osiris a "non-responsible" bidder in the Borough.[4] That motion carried unanimously. However, Council members voted to debar Osiris from bidding on Borough projects without any investigation or knowledge of Osiris' capacity to perform, without giving Plaintiffs notice that the issue of Osiris' responsibility would be raised at this meeting and without affording Moscatiello an opportunity to rebut the accusations that Osiris was not a responsible bidder.

Subsequently, on October 2, 2001, Defendants summarily rejected a bid by Osiris for "the Radford Project." The only other bid submitted on the Radford Project was for approximately $95,000, and Plaintiffs' unopened bid was for $49,200. In October of 2003, Defendants forbade the South Hills Area Council of Govern-

1. Defendants remaining in the case as of the date of the May 27, 27, 2004, order include Harold L. Berkoben, Kathleen N. DePuy, Philip J. Lahr, Robert J. McKown, Glenn P. Nagy, Andrew Sakmar, Adam J. Barone, Linda J. Book, Jahn A. Wotus and Thomas Ozemo.

2. Subsequently, Plaintiffs continued to submit bids on various construction projects in the Borough, and the Borough accepted Plaintiffs' bid proposals without comment or objection. However, because Plaintiffs were never the lowest bidder, they were not awarded any of these projects.

3. According to the original bid notice for the Oakdale Drive Project, a bid would be considered void unless it was accompanied by a PennDot pre-qualification certificate. Oakdale Construction submitted a low bid of $955,450; however, Oakdale's bid included

an expired PennDot pre-qualification certificate. Plaintiffs' bid of $978,760 was accompanied by a valid certificate. Over Plaintiffs' protests, Council then extended the bidding period on the Oakridge Drive Project for sixty days. Oakdale's bid was challenged in court and found to be invalid. However, rather than award the bid to Plaintiffs, Defendants decided to re-bid the Oakdale Drive Project with the PennDot pre-qualification requirement removed. At that time, Oakdale was the lowest bidder, and Plaintiffs were prohibited from submitting a bid.

4. This action apparently originated when the question of Plaintiffs' responsibility was raised with regard to the 1993 contract dispute, notwithstanding the terms of the parties' settlement agreement.

ments (SHACOG)[5] to award "the East Barlind Project" to Osiris, despite the fact that Osiris was the lowest bidder and was recognized by SHACOG as a responsible bidder. Instead, Defendants awarded the East Barlind Project to the second lowest bidder, in violation of the Pennsylvania competitive bidding statute, 53 Pa.C.S. § 5614, which requires that public contracts be awarded to the lowest responsible bidder.[6] Thereafter, in January 2003, Defendants rejected Plaintiffs' bid on the "Sanitary Sewers Project," even though Plaintiffs' bid was the lowest by $77,170.50.

Following the rejection of Plaintiffs' bid on the Sanitary Sewers Project, Franco Moscatiello, Moscatiello's father, filed a taxpayer lawsuit against the Borough and A. Merante Contracting, Inc. (Merante), seeking a preliminary injunction to enjoin the Borough from declaring Osiris a non-responsible bidder and awarding the Sanitary Sewers Project to Merante. He also sought a mandatory injunction to compel the Borough to award the contract to Osiris, the lowest bidder. Following hearings, the Honorable Timothy Patrick O'Reilly (Judge O'Reilly) found that the Borough's debarment of Osiris was "arbitrary and capricious, and not the result of a full investigation that warranted such an exercise of discretion by these municipal authorities." *Moscatiello v. Whitehall Borough*, (No. GD–03–005416, filed June 25,

2003) slip op. at 13. (R.R. at 78). On June 25, 2003, Judge O'Reilly granted a preliminary injunction enjoining the Borough from declaring Osiris a non-responsible bidder and from awarding the Sanitary Sewers Project contract to Merante. (R.R. at 66–81.) However, Judge O'Reilly denied the request for a mandatory injunction, concluding that he lacked authority to order the Borough to award the contract to Osiris.[7] (*See* Second Amended Complaint at ¶ 2, first amended complaint at ¶¶ 1–17 and 19–124.)[8]

On July 14, 2003, Plaintiffs filed a civil action against Defendants seeking monetary damages for harm allegedly caused by the Borough's actions in declaring Osiris a "non-responsible" bidder and rejecting Plaintiffs' bids for various construction projects in the Borough. (R.R. at 22–59.) Following rulings on preliminary objections and various motions, Plaintiffs filed a Second Amended Complaint on December 29, 2003. (R.R. at 117–29.) In Count I, Plaintiffs set forth a claim for "Economic Interference," alleging, *inter alia*, that Defendants each, and in concert, committed acts of wrongdoing through the unanimous and improper vote to declare Plaintiffs to be non-responsible bidders and the resulting decision to debar Plaintiffs from future bidding. Plaintiffs allege that Defendants thereby harmed Plaintiffs by depriving them of the opportunity to competitively

---

**5.** SHACOG is a council of governments representing fourteen municipalities in the South Hills area of Allegheny County, including the Borough. Part of what SHACOG does for these municipalities is to administer Community Development Block Grants for various municipal projects. In this case, SHACOG was administering the East Barlind Project for the Borough.

**6.** According to Exhibit "1" to Plaintiffs' original complaint, the award of the contract to the higher bidder resulted in the Community Block Grant funds used to fund the East Barlind Project ($518,280) having to be reim-

bursed for violation of the federal procurement regulations. (R.R. at 60–64.) (*See also* S.R.R. at 176b–84b.)

**7.** Judge O'Reilly's decision was affirmed by this court in *Moscatiello v. Whitehall Borough*, 848 A.2d 1071 (Pa.Cmwlth.2004).

**8.** The summarized facts are taken from Plaintiffs' Second Amended Complaint, which incorporates paragraphs 1 through 17 and 19 through 124 of Plaintiffs' first amended complaint.

bid on Borough construction projects, and, as a consequence, Plaintiffs lost the profits they would have earned by completing the work under the contracts that they should have been awarded in the Oakridge Drive, Radford, East Barlind and Sanitary Sewers Projects. (*See* Second Amended Complaint at ¶¶ 3–51, R.R. at 118–28.) In Count II, Plaintiffs set forth a claim for "Defamation," alleging that they suffered financial injury as a result of Defendants' conduct in illegally and improperly branding Plaintiffs as being "non-responsible" and "non-responsive," and publicizing this designation, thereby disparaging Plaintiffs' reputation within their profession. (*See* Second Amended Complaint at ¶¶ 53–56, R.R. at 128–29.) (R.R. at 22–59.)

Defendants filed preliminary objections to Plaintiffs' Second Amended Complaint on February 18, 2004, alleging, in relevant part, that, as Borough Council members, they are immune from suit pursuant to the doctrine of high public official immunity because all of the alleged actions taken and statements made were within the scope of their duties and authority as public officials. (S.R.R. at 88b–93b.)

■ On May 27, 2004, following argument and the filing of supplemental briefs, the Honorable Terrence W. O'Brien (Judge O'Brien) entered an order sustaining Defendants' preliminary objections to Plaintiffs' Second Amended Complaint and dismissing all counts against Defendants with prejudice. In doing so, Judge O'Brien relied on *Lindner v. Mollan*, 544 Pa. 487, 677 A.2d 1194 (1996), wherein our supreme court held that a borough mayor was a "high public official" who was absolutely immune from liability in a defamation action.[9] (R.R. at 1–19.) Plaintiffs appealed the May 27, 2004, order to Superior Court, (S.R.R. at 187b–88b), which transferred the matter to this court.[10] (S.R.R. at 202b.)

On appeal, Plaintiffs first argue that the trial court improperly relied on *Lindner* to dismiss their action under the doctrine of high public official immunity. According to Plaintiffs, *Lindner* does not control here because that case involved a relatively insignificant libel and slander action that survived preliminary objections. Plaintiffs argue that, by contrast, the present matter involves considerably more grave circumstances, where Defendants' actions prevented Plaintiffs, on four different occasions, from securing government-funded contracting work, and, therefore, the case should not have been dismissed on preliminary objections.

Plaintiffs also point out that in the present case, unlike the situation in *Lindner*, there has been a judicial determination (by Judge O'Reilly) that the actions of Defendants which caused the harm to Plaintiffs were arbitrary and capricious. Plaintiffs contend that arbitrary and capricious acts, by definition, are intended to do harm and, therefore, those who commit them are not immune from liability. Plaintiffs further suggest that, if such acts are protected under the doctrine of high public official immunity, then new law should be made to exclude arbitrary and capricious acts from the protection afforded by that doctrine.

---

**9.** Judge O'Brien also ruled that, *even absent application of the doctrine of high public immunity,* Plaintiffs' economic interference claim as set forth in the Second Amended Complaint was legally insufficient, and Plaintiffs have not challenged this determination on appeal.

**10.** Our scope of review of a trial court's order granting preliminary objections is limited to determining whether the trial court abused its discretion or committed an error of law. *Concerned Taxpayers of Clearfield County v. Clearfield County,* 764 A.2d 656 (Pa.Cmwlth. 2000).

■ Defendants counter that the trial court properly sustained the preliminary objections pursuant to the doctrine of high public official immunity. We are constrained to agree.

The Pennsylvania Supreme Court, in *Matson v. Margiotti*, 371 Pa. 188, 88 A.2d 892 (1952), set forth the common law doctrine of absolute privilege for high public officials, and, in *Lindner*, the court reconfirmed that this doctrine remains the law in Pennsylvania. The court explained that the doctrine of absolute privilege for high public officials

> as its name implies, is unlimited and exempts a high public official from all *civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice,* provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction.

*Lindner*, 544 Pa. at 490, 677 A.2d at 1195 (quoting *Matson*, 88 A.2d at 895 (emphasis added)).

■ The purpose of absolute immunity is to foreclose the possibility of suit. This doctrine

> is designed to protect the official from the suit itself, from the expense, publicity, and danger of defending the good faith of his public actions before a jury. And yet, beyond this lies a deeper purpose, the protection of society's interest

in the unfettered discharge of public business and in full public knowledge of the facts and conduct of such business. Absolute immunity is thus a means of removing any inhibition which might deprive the public of the best service of its officers and agencies.

*Montgomery v. City of Philadelphia,* 392 Pa. 178, 182, 140 A.2d 100, 102 (1958).

■ Importantly, where an official is entitled to absolute privilege, any personal or political motives are immaterial, as is the presence of malice or want of reasonable and probable cause or the fact that the innocent may sometimes suffer irreparable harm. *Spalding v. Vilas,* 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896); *Montgomery; Matson.* In addition, section 8550 of what is commonly called the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8550, which sets forth circumstances where official immunity can be waived, does not abrogate the privilege of high public official immunity from suit. *Lindner; Factor v. Goode,* 149 Pa.Cmwlth. 81, 612 A.2d 591, *appeal denied,* 533 Pa. 654, 624 A.2d 112 (1993).

The pitfalls here are obvious, and courts have recognized that there are valid arguments against permitting public officials absolute immunity from liability.[11] Thus, in applying the doctrine, courts have sought to balance the public's interest in encouraging unfettered discussion of public business against the undeniable right of the individual to protect his or her reputa-

11. In *Montgomery*, the court recognized that "the merited sterling reputations of innocent persons may be destroyed by unscrupulous public officials who, taking advantage of their positions and the access to the press obtained thereby, widely publish reckless or knowingly false defamation." *Id.* at 184, 140 A.2d at 103–04. *See also Spalding* (holding that although the plaintiff was seriously damaged financially and with respect to his reputation by statements of the postmaster general, the officer was exempt from suit even if those statements were false and malicious); *Matson* (recognizing the practice of some high public officials to slander and vilify innocent people who have little or no chance to defend themselves or their reputation, but holding that these officials nevertheless are completely immune from legal redress).

tion. In doing so, the "courts have declared that the public interest does not demand that all public officials be entitled to absolute privilege, but only that 'high ranking officers' be so protected." *Montgomery*, 392 Pa. at 185, 140 A.2d at 103 (*citing Matson*, 371 Pa. at 194, 196, 88 A.2d 892). Accordingly, we first must consider whether Defendants, as members of Borough Council, qualify as "high public officials."

■ In *Hall v. Kiger*, 795 A.2d 497 (Pa. Cmwlth.), *appeal denied*, 572 Pa. 713, 813 A.2d 846 (2002), this court held that, because the duties conferred upon borough council members necessitate the exercise of both legislative and policy-making powers, persons in that position have the status of high public officials entitled to raise the defense of absolute privilege from suit. Moreover, the doctrine of high public official immunity is applicable to *actions* by public officials, not just defamatory statements. *See, e.g., Durham v. McElynn*, 565 Pa. 163, 772 A.2d 68 (2001) (applying doctrine to hold assistant district attorney immune from tort action for acts taken during the course of his prosecution that allegedly violated the constitutional rights of the accused); *Holt v. Northwest Pennsylvania Training Partnership Consortium, Inc.*, 694 A.2d 1134 (Pa.Cmwlth. 1997) (applying doctrine to hold county commissioners acting in their official capacity immune from suit with regard to claims for intentional infliction of emotional distress and intentional interference with contractual relations). Thus, Defen-

dants qualify as high public officials under Pennsylvania law.

Next, we must consider whether Defendants' allegedly actionable behavior was made in the course of their official duties. In *McCormick v. Specter*, 220 Pa.Super. 19, 275 A.2d 688 (1971), the superior court emphasized that it was the public's interest, rather than the interest of the official, that supports the establishment of an absolute privilege. The court stated that "given the great potential for harm, the privilege must be limited to those statements and actions which are in fact 'closely related' to the performance of those official duties." *Id.* at 689.

In this case, Plaintiffs' claims for economic interference all stem from Defendants' allegedly improper vote at the August 1, 2001, Borough meeting to declare Osiris a non-responsible bidder.[12] (Second Amended Complaint, ¶¶ 3–13.) However, as the trial court stated, declaring Osiris a non-responsible bidder occurred during the course of a Borough Council meeting that was open to the public, where Defendants are responsible for awarding public works projects in their discretion and in the best interests of the Borough and its residents. Because the candid discussion and determination of the "non-responsibility" of bidding contractors is clearly part of the performance of a Borough Council member's official duties, Defendants' actions fall within the scope of absolute privilege, rendering Defendants absolutely immune from civil suits claiming damages in regard to those actions.[13]

**12.** Some other actions by Defendants are referenced but are not pled with specificity. For example, with regard to the East Barlind Project, Plaintiffs allege that Defendants prevented SHACOG from awarding the contract to Plaintiffs; however, Plaintiffs fail to specify any actions taken by Defendants in that regard other than the August 1, 2001, vote.

**13.** Plaintiffs had filed a civil action in federal district court (Federal Action) under 42 U.S.C. § 1983, the Racketeer Influenced and Corruption Organization Act (RICO), and under state law for, among other things, breach of contract and false light against the defendants for debarring Osiris and not awarding it the Oakridge Drive Project. The Federal Action was decided by the Honorable William L.

■ Plaintiff's cause of action for defamation also relates to the August 1, 2001, vote declaring Osiris a non-responsible bidder. With regard to defamation, certain factors help courts determine whether the statements are closely related to the official's legitimate duties: (1) the formality of the forum in which the words were spoken or published; and (2) the relationship of the legitimate subject of governmental concern to the person seeking damages for the defamatory utterance. *Hall.* As stated, the trial court concluded that the vote declaring Osiris a non-responsible bidder was related to Defendants' legitimate duties because: (1) the statements were made in the context of a Borough Council meeting that was open to the public; and (2) the statements were made while dealing with the awarding of a public works project. Thus, Defendants also are entitled to immunity with respect to Plaintiffs' defamation claims.

■ However, Plaintiffs also argue that dismissal of this case results in a conclusion that is inconsistent with that of Judge O'Reilly, whose findings that Osiris' debarment was arbitrary, capricious and an abuse of discretion should have been established as fact in this matter through the application of the doctrine of collateral estoppel. Plaintiffs acknowledge that Judge O'Reilly's case was a taxpayer's suit seeking injunctive relief, not a civil action for money damages. However, Plaintiffs contend that the doctrine of collateral estoppel should apply because Judge O'Reilly's factual findings and conclusions impact upon the issues presently before this court.[14] We disagree.

Judge O'Reilly's ruling that Defendants' actions were "arbitrary and capricious" does not affect whether Defendants are immune from *a civil suit for damages* on

Standish (Judge Standish). (R.R. at 133–70.) Plaintiffs argue that instead of adopting Judge O'Brien's analysis with respect to high public official immunity, we should adopt the analysis of Judge Standish in the Federal Action, wherein he ruled that absolute *legislative* immunity was not available to bar Appellants' Section 1983 claim because Defendants' August 1, 2001, vote constituted "managerial" or "proprietary" acts as opposed to "legislative" acts. *Bogan v. Scott–Harris*, 523 U.S. 44, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998). Plaintiffs imply that, under Judge Standish's ruling, we should conclude that the August 1, 2001, vote was not taken in the course of Defendants' official duties as high public officials and, thus, hold that high public official immunity · does not apply. (*See* Plaintiffs' brief at 9–10.) However, the doctrines of absolute legislative immunity and high public official immunity arise under different circumstances, and Judge Standish never stated that the August 1, 2001, vote was not within Defendants' duties or powers as Borough Council members. To the contrary, as to the tort of false light, which is akin to Plaintiffs' defamation claim, Judge Standish found that Defendants were protected by the doctrine of high public official immunity.

14. Collateral estoppel bars relitigation of an issue where a question of law or an issue of fact essential to a judgment is actually litigated and determined by a court of competent jurisdiction. *Three Rivers Aluminum Co., Inc., v. Zoning Hearing Board of Marshall Township*, 152 Pa.Cmwlth. 203, 618 A.2d 1165 (1992). The doctrine of collateral estoppel applies when: (1) the issue decided previously was identical; (2) there was a final judgment on the merits; (3) the parties were the same; and (4) the defendants had a full and fair opportunity to litigate the issue in the prior case; and (5) the determination in the prior proceeding was essential to the judgment. *City of Pittsburgh v. Zoning Board of Adjustment of Pittsburgh*, 522 Pa. 44, 559 A.2d 896 (1989). It has been held that, because the grant of a preliminary injunction is not a final adjudication on the merits, the doctrine of collateral estoppel is inapplicable in such cases. *In Re Appeal of Little Britain Township*, 651 A.2d 606 (Pa.Cmwlth.1994), *appeal denied*, 541 Pa. 645, 663 A.2d 696 (1995). *But see Farley v. Zoning Hearing Board of Lower Merion Township*, 161 Pa.Cmwlth. 229, 636 A.2d 1232, *appeal denied*, 539 Pa. 658, 651 A.2d 544 (1994).

the basis of high public official immunity.[15] This doctrine applies, even when statements and/or actions are improperly motivated and lack a reasonable basis, "provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority." *Lindner*, 544 Pa. at 490, 677 A.2d at 1195. Here, Judge O'Reilly never found that Defendants' statements or actions at issue were made outside the course and scope of their duties and powers as Borough Council members. Indeed, in the Second Amended Complaint, Plaintiffs acknowledge that Defendants committed the acts complained of "in their capacity" as members of Borough Council. (*See* Second Amended Complaint at ¶ 2, incorporating amended complaint at ¶¶ 5–14.) Thus, the trial court correctly held that the doctrine of collateral estoppel did not apply to deny Defendants' preliminary objections to Plaintiffs' Second Amended Complaint.

Accordingly, because the trial court did not err when it sustained Defendants' preliminary objections to Plaintiffs' Second Amended Complaint based on the doctrine of high public official immunity,[16] we will affirm.

*ORDER*

AND NOW, this 23rd day of June, 2005, the order of the Court of Common Pleas of Allegheny County, dated May 27, 2004, is hereby affirmed.

## DISSENTING OPINION BY Judge SMITH–RIBNER.

I respectfully dissent from the majority's decision holding that the Defendants before the trial court are entitled as high public officials to absolute immunity from suit filed by Osiris Enterprises and Antonia F. Moscatiello (Osiris). The trial court granted the Defendants' preliminary objections despite a prior ruling by Judge O'Reilly of the same court, who previously ruled that the Defendants acted arbitrarily and capriciously when they permanently debarred Osiris from further contracting with the county.

Osiris sued the Defendants based upon an August 1, 2001 vote taken during a Borough Council meeting that declared Osiris to be a non-responsible bidder in the county, even though there was no debate or discussion of the matter and Osiris was not even allowed to respond to the action taken. As a consequence of the vote, Osiris was blocked from obtaining any government-funded contracting work. The ma-

---

**15.** In affirming Judge O'Reilly's decision, this court recognized that to award a contract to a higher bidder capriciously without a full and careful investigation is an abuse of discretion which *equity* will restrain. *Kierski v. Township of Robinson*, 810 A.2d 196 (Pa.Cmwlth. 2002); *Kratz v. City of Allentown*, 304 Pa. 51, 54, 155 A. 116, 117 (1931). Interestingly, Plaintiffs filed suit over the Oakridge Drive Project, challenging Osiris' August 1, 2001, debarment and objecting to Borough Council's decision to extend the bidding period on the Project. The matter was heard by the Honorable David S. Cercone (Judge Cercone). Although Judge Cercone ruled that Defendants could not extend the bidding period, he also ruled that the Borough's determination that Osiris was a non-responsible bidder was

*not* arbitrary and capricious and refused to enjoin the debarment. An appeal from this ruling was subsequently withdrawn by Plaintiffs. (*See Moscatiello v. Whitehall Borough*, (No. GD–03–005416), R.R. at 73–74; Federal Action, R.R. at 142 n. 8.)

**16.** Our holding is merely that Borough Council members cannot be held individually liable to Plaintiffs for any monetary damages they sustained in connection with the official action by Borough Council. However, as evidenced by Judge O'Reilly's order enjoining Borough Council from declaring Osiris a non-responsible bidder, Borough Council is precluded from acting in violation of the prescribed bidding procedures.

jority reviews the case law governing the doctrine of absolute immunity for high public officials, and it concludes that despite Judge O'Reilly's prior ruling that the Defendants acted arbitrarily and capriciously in their conduct toward Osiris, the Defendants were nevertheless immune from civil suit.

I note that in *Montgomery v. City of Philadelphia,* 392 Pa. 178, 140 A.2d 100 (1958), the Pennsylvania Supreme Court explained that the doctrine of absolute immunity for high public officials was created to protect public officials from suit and from the expense, publicity and danger of defending the "good faith" of the public officials' public actions before a jury. The immunity removes any inhibition that might deprive the public of the best services from its public officers and agencies. *Id.*

The presumed "good faith" of public officials in the performance of their official duties to the best of their ability represents the basis for the doctrine of absolute immunity but that standard was ignored by the Defendants in this case and therefore the doctrine should not apply. That is particularly so when a judge of the same trial court had ruled that the Defendants acted arbitrarily and capriciously in connection with the permanent debarment of Osiris from further contracting with the county and this Court has affirmed that decision. *See Moscatiello v. Whitehall Borough,* 848 A.2d 1071 (Pa.Cmwlth.2004). Even excluding Judge O'Reilly's prior ruling, this case should not have been decided on preliminary objections when Orisis, if allowed to proceed, may have presented facts sufficient to establish that the Defendants' conduct and actions were so egregious that they totally exceeded the scope of their official duties. Therefore, the trial court's order should be reversed, and this

case should be remanded for further proceedings.