**CORNELL COMPANIES, INC., Plaintiff,**

v.

**BOROUGH OF NEW MORGAN, et al., Defendants.**

**Civil Action No. 06–4113.**

United States District Court, E.D. Pennsylvania.

May 31, 2007.

Antoinette R. Stone, Brown Stone Nimeroff LLC, Brian J. McCormick, Jr., Sheller PC, H. Marc Tepper, Buchanan Ingersoll, P.C., Philadelphia, PA, Peter J. Ennis, Buchanan Ingersoll & Rooney P.C., Pittsburgh, PA, for Plaintiff.

Curtis P. Cheyney, III, Swartz Campbell & Detweiler, Philadelphia, PA, Mark F. Himsworth, Hamburg Rubin Mullin Maxwell & Lupin, Lansdale, PA, James C.

Sargent, Jr., Law Offices of Windle & McErlane, P.C., Thomas P. Hogan, Jr., Lamb McEriane PC, West Chester, PA, for Defendants.

## OPINION

STENGEL, District Judge.

Cornell Companies, Inc. provides correction, treatment, and rehabilitation services for juveniles who have been adjudicated delinquent. The New Morgan Academy is a secure care facility for juvenile offenders owned and operated by Cornell in the Borough of New Morgan. The Academy opened in 2000, but closed in 2002 because of some operational and administrative difficulties. Cornell is trying to re-open the New Morgan facility, but the Borough is now opposed. In this lawsuit, Cornell claims that the Borough, its council, and various public officials have engaged in a course of improper acts and unconstitutional behavior in an attempt to prevent the Academy from reopening. The defendants argue that Cornell's claims are unripe, unmeritorious, barred under various immunity doctrines, or not specific enough. The Borough contends that Cornell is trying to circumvent the local zoning process with its federal complaint. The defendants have filed several motions to dismiss Cornell's complaint. For the reasons set forth below, I will grant the motions in part and deny them in part.

## TABLE OF CONTENTS

I. Background ............................................................... 250
 A. Initial Opening of New Morgan Academy ................................. 250
 B. Sewage Facilities Agreement and Maintenance Agreement ................. 250
 C. Cornell's Attempt to Reopen and the Defendants' Interference .......... 251
 D. Defendants' Promotion of Third Parties' Interests .................... 252

II. Procedural History ..................................................... 253

III. Rule 12(b)(6) Motion to Dismiss Standard ............................. 254

IV. Discussion of Borough Defendants' Motion to Dismiss ................... 255
 A. Plaintiff's Constitutional Claims ................................... 255
 1. Ripeness ....................................................... 255
 a. Substantive Due Process ..................................... 255
 i. Facial Challenge to Ordinance ........................... 256
 ii. Course of Conduct Claim ................................ 257
 b. Equal Protection Claim ...................................... 258
 c. Procedural Due Process Claim ................................ 258
 d. Remaining Constitutional Claims ............................. 259
 2. Merits of Substantive Due Process Claims ....................... 259
 a. Facial Attack of 2006 Amendment ............................ 259
 b. Course of Conduct Claim ..................................... 261
 3. Merits of Remaining Constitutional Claims ...................... 262
 B. Count Seven's Claim Under Title II of ADA ........................... 262
 C. Count Nine's Breach of Contract Claim ............................... 265
 D. Count Ten's Unjust Enrichment Claim ................................. 265
 E. Count Twelve's Promissory Estoppel Claim ............................ 266
 F. Count Thirteen's Zoning Estoppel Claim .............................. 267

V. Discussion of Individual Defendants' Motion to Dismiss ................ 268
 A. Notice Pleading Requirement of the Federal Rules .................... 268
 B. Count Eight's Tortious Interference with Prospective Contractual
 Relationship ....................................................... 270
 C. Count Eleven's Defamation Claim .................................... 271

 D. Estoppel Claims Against Individual Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . 272
 E. Immunity Defenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 273
 1. Legislative Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 273
 2. High Public Official Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 274
 3. Pennsylvania Government Immunity Act . . . . . . . . . . . . . . . . . . . . . . . . . . . 276

VI. Motion for Expedited Discovery and Expedited Consideration . . . . . . . . . . . . . . . . . 277

VII. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 278

## I. BACKGROUND[1]

### A. Initial Opening of New Morgan Academy

Cornell is an organization that builds and operates secure care facilities and detention centers throughout the country. In 1998, Cornell began the process of establishing a secure care facility for juvenile offenders in the Borough of New Morgan, Berks County.[2] In connection with the Borough's consideration of Cornell's request to construct a center, the Borough held a public hearing. At the hearing, Cornell explained to the community its plan to open a juvenile secure care facility which would include a fully accredited high school. In addition, prior to any approval by the Borough, representatives of the Borough Council toured Cornell's facility in South Mountain, Pennsylvania. Cornell represented to the defendants that its Borough of New Morgan facility would be similar to the South Mountain program.

Cornell was successful in its efforts. First, the Borough amended its zoning ordinance to allow the project to proceed. The Borough changed the definitions for "School" and "Boarding School" and permitted a "Boarding School or similar facility" by right in the "I" Industrial Zoning District. Next, Cornell bought land in the Borough and built the New Morgan Academy for $53 million. Eventually, Cornell obtained all the necessary state licenses and began operating the Academy in October 2000. Due to "problems with discipline and improper conduct by the staff," however, Cornell voluntarily shut down the Academy and relinquished its license to the Pennsylvania Department of Public Welfare ("DPW") on October 27, 2002.

### B. Sewage Facilities Agreement and Maintenance Agreement

The Borough and Cornell entered into a Sewage Facilities Agreement ("SFA") and

---

1. I have accepted as true all allegations of the Third Amended Complaint.

2. Under Pennsylvania regulations, different categories of detention centers exist. The New Morgan Academy was known as a "secure care facility." *See* 55 Pa.Code § 3800.271. Pennsylvania also licenses "secure detention facilities." *See* 55 Pa.Code § 3800.281. Secure detention is a form of secure care. *See* 55 Pa.Code § 3800.5. There appears to be a disconnect between the parties regarding this terminology. The plaintiff refers to its facilities under the regulation term "secure care facility." Its position is that the Academy was licensed and represented to the defendants as a "secure care facility." The defendants, on the other hand, use

the term "detention facility" in its generic sense. In their view, because the Academy had bars on its windows and locked-down or confined its students, Cornell operated as a detention facility. Cornell avers, however, that the defendants intentionally refer to the Academy as a juvenile detention facility, even though they are familiar with the state regulations and accepted the Academy as a "secure care facility." (Cornell claims the Borough and its representatives were, and are, aware of the nature of the Academy operations since its inception.) According to Cornell, the defendants hope to confuse the public and the state into thinking that the Academy operated as something different than what Cornell represented.

a Maintenance Agreement ("MA"). Under the SFA, Cornell agreed to design and construct a sewage facility at its own expense. In exchange, the Borough agreed to accept the dedication of the facility upon its completion and operate it going forward. In addition, the Borough was to reimburse Cornell within ten years for the cost it incurred in the construction of the sewage facility, mainly through mandatory hookup and user fees. Under the MA, Cornell would be liable for the failure of the sewage treatment plant to operate in accordance with approved plans, if the Borough reported such failure within 18 months of the date of the Maintenance Agreement.

In the summer of 2000, Cornell completed the construction of the sewage facility. The facility met the specifications approved by the Borough and the Pennsylvania Department of Environmental Protections and cost $2.15 million. The Borough, however, refused to accept dedication of the facility and refused to release Cornell from its maintenance bond under the MA. The Borough falsely claimed that the facility had flaws for which Cornell was responsible under the SFA and MA. The Borough took the additional step of misrepresenting to state agencies the condition and functionality of the sewage facility.

The Borough has failed to comply with its reimbursement obligations under the SFA. The Borough has not made any payments to Cornell and it has not required all Borough establishments to connect to the public sewer system. Due to the lack of additional users, the Borough has been billing Cornell for the operation and main-

tenance of the sewage facility at a rate of $13,000 per quarter and Cornell has paid the Borough at least $367,000 for the operation of the facility.

## C. Cornell's Attempt to Reopen and the Defendants' Interference

In 2005, Cornell decided to resume the operation of the Academy under new leadership. Cornell informed the defendants of this decision several times over the next year and the defendants did not respond in any way. Beginning in June of 2006, the defendants began to interfere with Cornell's efforts to reopen the Academy.

First, Cornell began the process of obtaining the necessary licenses from the state. Cornell alleges that the defendants interfered with its efforts to obtain state approval by sending an *ex parte* letter to the Pennsylvania Department of Education complaining about the Academy. Despite these statements by the defendants, the state awarded Cornell the certificates necessary to reopen the Academy.

Second, on August 15, 2006, the Borough Council held a meeting in which an amendment ("2006 amendment") to the Borough's Zoning Ordinance was passed to specifically prohibit the operation of the Academy in its current location. According to Cornell, the defendants deliberately did not inform Cornell of the amendment or of the hearing, even though Cornell had repeatedly asked the defendants if there would be any impediments to the reopening of the Academy. In fact, the defendants continued to withhold information about the amendment from Cornell after its passage.[3]

---

3. The defendants contend they followed all notice requirements under the Municipalities Planning Code ("MPC") for amending an ordinance and Cornell failed to allege otherwise. In fact, at oral argument on the mo-

tions to dismiss, Cornell did not dispute that all MPC notice requirements were met for the 2006 amendment's enactment and that the defendants were not required to provide Cornell with individual notice of the hearing.

The 2006 amendment defined the term "detention facility" and permitted a detention facility's use by right within a specified commercial zoning district. Although the defendants have accused Cornell of operating the Academy in violation of the pre–2006 amendment zoning ordinance, this new amendment was directed at the Academy and was intended to prevent the Academy's reopening in the "I" district. The Borough's insistence that Cornell operated the Academy as a detention facility in violation of the pre–2006 amendment zoning ordinance is contrary to the Borough's prior interpretation of the zoning ordinance. In addition, Cornell alleges that the Academy is not a detention facility as that term is defined in the 2006 amendment.[4]

Third, in a letter dated August 16, 2006, the day after the zoning ordinance was amended, counsel to the Borough sent a letter to Cornell informing it that the Borough had sent letters to Pennsylvania state agencies in an effort to block the Academy's relicensure by the state.[5] The Borough's letters to the state contained numerous false statements about the Academy's operations, its educational component, the Borough's zoning, and the sewage system. The letter did not mention the previous day's amendment to the zoning ordinance.

Fourth, the Borough has and continues to misrepresent to the Commonwealth of Pennsylvania, the press, and the public that the Academy was not and will not be operated as a school.

Finally, the Borough has advised Cornell to request a certificate of occupancy from the Borough zoning office. Cornell claims a certificate of occupancy is not necessary because it has already obtained all requisite certificates with the initial opening of the facility in October 2002.[6]

## D. Defendants' Promotion of Third Parties' Interests

The complaint alleges that the defendants are catering to third parties' ("Third Parties") real estate development interests in their decision to interfere with the Academy's reopening. The Third Parties are opposed to the Academy because they view it as a threat to the private housing developments they intend to build. As a result, the Third Parties have caused and conspired with the defendants to obstruct Cornell's efforts to reopen the Academy

---

However, Cornell argues that "the Borough's failure to [notify Cornell of the amendment] at any time in 2006, when specifically asked about impediments to the operation of New Morgan Academy, amounts to mendacity at the most reprehensible level." *See* Docket No. 26, Pl. Consolidated Mem. Opp'n at 6.

4. Cornell has not applied for a certificate of occupancy under the new amended ordinance so the zoning authorities of the Borough have not had a chance to apply the 2006 amendment to the Academy.

5. Cornell has since obtained the necessary licenses from the Commonwealth of Pennsylvania to reopen the Academy.

6. The defendants claim that when the Academy relinquished its license to the DPW in 2002 it closed and ceased operating. The facility was "abandoned" for zoning purposes. Now, based on the change from abandoned use to a proposed use, Cornell is required to apply for a certificate of occupancy under the Borough of New Morgan's zoning ordinance. Cornell counters the defendants' arguments by claiming that they never intended to abandon the use and operation of the Academy and, under Pennsylvania law, Cornell cannot be considered to have abandoned the Academy. *See Latrobe Speedway, Inc. v. Zoning Hearing Bd. of Unity Twp.*, 553 Pa. 583, 720 A.2d 127 (1998). These arguments do not factor into this court's decision because on a Rule 12(b)(6) motion to dismiss, I must accept all factual averments in the complaint as true.

and to force Cornell to sell its property. No where in the complaint are these Third Parties identified.

## II. PROCEDURAL HISTORY

█ Cornell Companies filed a thirteen-count suit against the Borough of New Morgan, the Borough Council (together with the Borough referred to as the "Borough Defendants"), and various elected officials of the Borough ("Individual Defendants")[7] on September 15, 2006.[8] It has since filed three subsequent complaints. The Second and Third Amended Complaints contain additional factual allegations, but all the amended complaints contain the same counts.[9] In Cornell's thirteen-count complaint Cornell alleges or requests the following:[10]

(1) In violation of 42 U.S.C. § 1983,[11] the defendants, through their arbitrary and ill-motivated government action, deprived Cornell of its rights to substantive and procedural due

process and equal protection of the laws as guaranteed by the Fourteenth Amendment to the U.S. Constitution.

(2) In violation of 42 U.S.C. § 1985(3), the defendants conspired with each other and with other Borough employees and the Third Parties to interfere with Cornell obtaining state approval for the Academy and to deprive Cornell of the equal protection of the laws.

(3) In violation of 42 U.S.C. § 1983, the defendants deprived Cornell of its constitutionally protected property right to obtain and maintain necessary state licenses for the Academy without due process of law.

(4) In violation of 42 U.S.C. § 1986, the defendants failed to act and prevent the deprivation of Cornell's civil rights despite the defendants' knowledge of the ongoing pattern of misconduct towards Cornell and

7. The Individual Defendants named in the lawsuit are Richard Venezia, Tressie Marroon, Robert Williams, Carolyn William, and Dena Geunes. Dena Geunes is the mayor of the Borough and the remainder Individual Defendants are Borough Council members. Each Defendant is sued in his or her official capacity and individual capacity.

8. Jurisdiction is asserted under 28 U.S.C. § 1331 for the federal law claims, 28 U.S.C. § 1332 for most of the state law claims because the parties are diverse and Cornell is seeking more than $75,000 on the claims, and supplemental jurisdiction for the remainder of the claims under 28 U.S.C. § 1367(a).

9. The one difference between the First Amended Complaint and the subsequent amended complaints is that Cornell dropped two state law tort claims against the Borough Defendants—tortious interference with prospective contractual relationships and defamation. Cornell acknowledged that Pennsylvania's Political Subdivision Tort Claims Act provides the Borough Defendants with immu-

nity from the claims. Cornell maintained those claims, however, against the Individual Defendants.

10. The number next to each count corresponds to the count number in the Third Amended Complaint.

11. "To state a claim for relief in an action brought under § 1983, [claimants] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). The defendants do not dispute that the actions that form the basis of the § 1983 claims were performed under the authority of state law. Therefore, the issue for consideration is whether the complaint adequately alleges a constitutional deprivation of rights. *See Windsor Jewels of Pa., Inc. v. Bristol Twp.,* No. 01–0553, 2002 WL 31999367, *6, 2002 U.S. Dist. LEXIS 12163, at *20 (E.D.Pa. Mar. 28, 2002).

of the various acts that comprised the alleged conspiracy.

(5) A declaration, pursuant to 28 U.S.C. § 2201, that the Borough denied Cornell its rights to due process and equal protection under the United States and Pennsylvania Constitution.

(6) A declaration, pursuant to 28 U.S.C. § 2201, that Cornell's use of New Morgan Academy as a secure educational and treatment facility for juvenile offenders is a permitted use under the Borough's zoning ordinance consistent with the Borough's original interpretation of the zoning ordinance.

(7) In violation of Title II of the Americans with Disability Act ("ADA"), 42 U.S.C. § 12132, the Borough Defendants denied Cornell equal services, programs, or activities because of Cornell's known relationship with individuals with disabilities (the children clients of the Academy).

(8) The Individual Defendants tortiously interfered with Cornell's prospective contractual relationships with its client agencies by obstructing Cornell's ability to obtain the necessary state licenses.

(9) The Borough breached the SFA Contract.

(10) The Borough has been and continues to be unjustly enriched by the use of the sewage facility and the acceptance of Cornell's sewage facility maintenance and operation fees.

(11) The Individual Defendants made knowingly false and defamatory statements to third parties regarding Cornell for the purpose of injuring the reputation of Cornell.

(12) Promissory estoppel based on Cornell's reasonable reliance on the defendants' representations that they would assume responsibility of the sewage facility and that the Academy was a permitted use under the Borough's zoning ordinance.

(13) Zoning estoppel based on Cornell's reasonable reliance on the defendants' representations that the Academy was a permitted use under the zoning ordinance.

The Borough Defendants filed a motion to dismiss in response to the First Amended Complaint and the Third Amended Complaint. *See* Docket No. 12, 21. The Individual Defendants separately filed their own motion to dismiss to the First Amended Complaint and the Third Amended Complaint. *See* Docket No. 11, 20. Cornell filed two responses. Cornell first replied to both motions to dismiss filed in response to the First Amended Complaint. *See* Docket No. 13. Cornell then filed a second response in opposition to the motions to dismiss filed by the defendants in reply to the Third Amended Complaint. *See* Docket No. 26. Cornell's second response incorporated by reference its memorandum in opposition to defendants' first motions to dismiss. Therefore, currently before this court are the defendants' two motions to dismiss filed in connection with the Third Amended Complaint. *See* Docket No. 20, 21. The defendants' other motions to dismiss (Docket No. 11, 12) are denied as moot.

### III. Rule 12(b)(6) Motion to Dismiss Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept the complaint's allegations as true and draw all reasonable inferences in the plaintiff's favor. *Zimmerman v. HBO Affiliate*

*Group*, 834 F.2d 1163, 1164–65 (3d Cir. 1987).

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." The rule is designed to screen out cases where "a complaint states a claim based upon a wrong for which there is clearly no remedy, or a claim which the plaintiff is without right or power to assert and for which no relief could possibly be granted." *Port Auth. v. Arcadian Corp.*, 189 F.3d 305, 311–12 (3d Cir.1999). Under Rule 12(b)(6), a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The issue, therefore, is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support its claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *See also Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir.2000).

## IV. DISCUSSION OF BOROUGH DEFENDANTS' MOTION TO DISMISS

### A. Plaintiff's Constitutional Claims

#### 1. Ripeness

"The ripeness doctrine serves to determine whether a party has brought an action prematurely and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." *Khodara Envtl., Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir.2004) (quotations and citation omitted). "The doctrine seeks to avoid entangling courts in the hazards of premature adjudication." *Felmeister v. Office of Attorney Ethics*, 856 F.2d 529, 535 (3d Cir.1988).

In their Rule 12 motion, the defendants argue that each of the constitutional claims (Counts One through Six) should be dismissed because the counts are not ripe for adjudication. In their view, the six counts mischaracterize local zoning issues as constitutional violations. The defendants rely on several Third Circuit opinions for the proposition that "in cases involving land-use decisions, a property owner does not have a ripe constitutional claim until the zoning authorities have had an opportunity to arrive at a final, definitive position regarding how they will apply the regulations at issue to the particular land in question." *Sameric Corp. of DE v. City of Philadelphia*, 142 F.3d 582 (3d Cir. 1998). *See also Acierno v. Mitchell*, 6 F.3d 970, 974–75 (3d Cir.1993); *Taylor Investment, Ltd. v. Upper Darby Twp.*, 983 F.2d 1285 (3d Cir.1993). Under this "finality rule," a plaintiff property owner must prove that a "final decision has been reached by the agency before it may seek compensatory or injunctive relief in federal court on federal constitutional grounds." *Acierno*, 6 F.3d at 975. The finality rule has been applied to constitutional claims founded on due process and equal protection violations.

Cornell responds to the defendants' arguments by citing to the recent Third Circuit opinion of *County Concrete Corporation v. Twp. of Roxbury*, 442 F.3d 159 (3d Cir.2006). In its view, its complaint contains ripe constitutional claims for this court's consideration and none of the claims fall under the finality rule.

#### a. Substantive Due Process

The Fourteenth Amendment of the Constitution provides that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV. " 'To prevail on a substantive due process claim, a plaintiff must demonstrate that an arbitrary and

capricious act deprived them of a protected property interest.' " *County Concrete*, 442 F.3d at 165 (quoting *Taylor Inv.*, 983 F.2d at 1292). Cornell's substantive due process ("SDP") claims mirror the claims of the plaintiff in *County Concrete* in many respects and, similar to the holding in that case, Cornell's SDP claims are ripe. The allegations in the complaint allege two ripe substantive due process claims—one claim facially attacks the 2006 amendment and the other rests on the defendants' improper course of conduct in Cornell's attempt to reopen the Academy.

### i. Facial Challenge to Ordinance

The ripeness of a claim alleging a constitutional violation in the land-use and zoning arena depends upon whether the plaintiff is raising (1) an "as-applied" challenge or (2) a facial attack on a zoning ordinance. In an as-applied case, the plaintiff is contending that the defendant municipal agency violated his or her constitutional rights in the manner in which an ordinance was applied to his or her property. The finality rule can bar an as-applied substantive due process claim. That is because "only once a '[local] decision maker has arrived at a definitive position on the issue' has a property owner been inflicted with 'an actual, concrete injury.' " *County Concrete Corp. v. Twp. of Roxbury*, 442 F.3d 159 (3d Cir.2006) (quoting *Williamson County Regional Planning Com. v. Hamilton Bank*, 473 U.S. 172, 192, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985)). The Third Circuit has stressed the importance of the finality rule in the as-applied context because of its "reluctance to allow the courts to become super land-use boards of appeals. Land-use decisions concern a variety of interests and persons, and local authorities are in a better position than the courts to assess the burdens and benefits of those varying interests." *Sameric*, 142 F.3d at 598.

Facial attacks on a zoning ordinance, on the other hand, do not implicate ripeness concerns or the fear of a federal court overstepping its jurisdiction into local matters. The finality rule does not apply "to *facial* attacks on a zoning ordinance, i.e., a claim that the mere enactment of a regulation either constitutes . . . a substantive violation of due process or equal protection. A 'final decision' is not necessary in that context because when a landowner makes a facial challenge he or she argues that *any* application of the regulation is unconstitutional . . . ." *County Concrete*, 442 F.3d at 164 (internal quotations and citations omitted). In *County Concrete*, the Third Circuit held that when a plaintiff facially attacks an ordinance the cause of action is ripe, even if the plaintiff did not seek a variance from the zoning ordinance.

In order to state a valid facial substantive due process claim, the plaintiff must assert that the ordinance "as a whole is arbitrary, capricious and unreasonable." *Id.* at 166. In other words, the plaintiff's claim must allege that "the enactment of a zoning ordinance, in and of itself, violates the Due Process Clause." *Id.* Cornell successfully pleads such allegations in its complaint. Cornell claims that the 2006 zoning ordinance amendment was intentionally directed at the Academy to prohibit its operation and not to serve any legitimate government reason. *See* Third Am. Compl. ¶¶ 58, 59, 66–68. The defendants' passage of the 2006 amendment was unconstitutional. Therefore, the plaintiff's substantive due process claim, as it relates to its facial challenge of the 2006 amendment, is ripe for this court's consideration.

The defendants' reliance on *Taylor Investment, Ltd. v. Upper Darby Twp.*, 983 F.2d 1285 (3d Cir.1993), and its progeny to support their ripeness argument is mis-

placed. In those cases, the court applied the finality rule discussed above, but the cases involved land-use decisions regarding specific pieces of property. The finality rule applied because the plaintiffs' due process and equal protection claims centered around how an ordinance or regulation was *applied* to their property. In fact, in *Glendon Energy Co. v. Borough of Glendon,* 836 F.Supp. 1109 (E.D.Pa.1993), a case the Borough Defendants discuss at length in their brief, the court acknowledged that the finality rule does not apply when a plaintiff facially challenges an ordinance: "Indeed, the finality rule is not even applicable to facial challenges. In this case, [the plaintiff] does not challenge the facial validity of the ordinance . . . ." *Id.* at 1117 n. 6 (citing *Southern Pacific Transportation Co. v. City of Los Angeles,* 922 F.2d 498, 507 (9th Cir.1990); *General Offshore Corp. v. Farrelly,* 743 F.Supp. 1177, 1188 (D.Vi.1990)). Here, however, Cornell does challenge the facial validity of the ordinance and such a claim is ripe.

### ii. Course of Conduct Claim

In *Blanche Road Corp. v. Bensalem Twp.,* 57 F.3d 253 (3d Cir.1995), the Third Circuit identified a substantive due process cause of action that falls outside the zoning realm and the requirements of the finality rule. In *Blanche Road,* the plaintiff landowners asserted that the defendant Township officers "engaged in a campaign of harassment designed to force [it] to abandon its development of [an] industrial park." *Id.* at 258. The court held that the plaintiffs did not need to comply with the finality rule where the complaint alleges that the defendant Township officers "deliberately and improperly interfered with the process by which the Township issued permits, in order to block or to delay the issuance of plaintiffs' permits, and that defendants did so for reasons unrelated to the merits of the application for the per-

mits." *Id.* at 267–68. Such a course of conduct claim is "substantively different" than a claim presented in an "as-applied" SDP case, and "internal review of the individual permit decisions is thus unnecessary to render such a claim ripe." *Id.* at 268. "Such actions, if proven, are sufficient to establish a substantive due process violation, actionable under § 1983, even if the ultimate outcome of plaintiffs' permit applications was favorable." *Id.*

The Third Circuit reaffirmed this holding in *County Concrete.* In that case, the property owners alleged in their complaint:

That [the Township] attempted to "impose unreasonable and unlawful restrictions" on their use of their property in violation of a 1993 agreement, to condition approval of their application on terms in violation of the 1993 agreement, to defeat their application by erroneously attributing environmental contamination from other sources to their extraction operations, and made false public accusations against [the property owners] during the application process. Additionally, [the property owners] claim that the 1999 . . . investigation and . . . subsequent letter to the Township made false accusations about [the property owners'] extraction operations in order to "restrict and impede soil extraction and related activity which previously had been agreed, approved, and/or requested by [the Township]."

442 F.3d at 166–67. The court held that these allegations were similar to the ones that the plaintiffs detailed in *Blanche Road* and, as a result, "are sufficient to establish a ripe SDP claim . . . ." *Id.* at 167.

Here, Cornell's complaint and its SDP claim are based on the defendants' actions over the last two years that were directed at the Academy and were intend-

ed to prevent Cornell from reopening the Academy. These allegations are similar to the plaintiffs' allegations in *Blanche Road* and *County Concrete*. And as the Third Circuit held in those cases, such a course of conduct claim is sufficient to establish a ripe SDP claim.

### b. Equal Protection Claim

■ The defendants point to the finality rule to argue that the plaintiff's other constitutional claims are premature for adjudication. The problem this court faces on ruling on the ripeness of the plaintiff's equal protection clause ("EPC") claim is that the composition of the claim is far from clear. Cornell merely states in Count One of the complaint that the defendants' actions deprived it of the equal protection of the law. The complaint does not provide much context or guidance. Cornell argues in its briefs in opposition to the motions that the finality rule should not apply to the EPC claim because it has brought a facial challenge to the ordinance.

■ The Fourteenth Amendment of the U.S. Constitution prohibits a state from "denying to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Much like with a SDP facial claim, an EPC *facial* challenge to a zoning ordinance does not need to adhere to the finality rule. The basis of an EPC facial challenge is that the mere enactment of the ordinance violates the EPC because it treats the plaintiff's property differently than other similarly

situated landowners. *See County Concrete*, 442 F.3d at 167. A plaintiff landowner's EPC land-use claim is ripe when it alleges that a municipality knew exactly how the plaintiff intended to use its land and the municipality passed the ordinance specifically tailored to prevent that use. "It would be an exercise in futility to require [the plaintiff property owners] to seek a variance from an ordinance specifically directed at their properties." *Id.*

As Cornell alleges in its complaint, the 2006 amendment was "directed specifically at New Morgan Academy and specifically prohibited the operation of New Morgan Academy." Third Am. Compl. ¶ 59. The defendants have made it clear (in this case and in a motion for a preliminary injunction filed in another case) that the new amended zoning ordinance prohibits the reopening of the Academy. Therefore, under the holding in *County Concrete*, a court may not impose the finality rule in a § 1983 equal protection action when a zoning board's adverse ruling or a denial of a variance is not in doubt. It would be an "exercise in futility." [12]

### c. Procedural Due Process Claim

■ "To prevail on a procedural due process claim, plaintiffs must demonstrate the [municipality] deprived them of a protected property interest and state procedures for challenging that deprivation do not comport with due process of law." *Taylor Inv., Ltd.*, 983 F.2d at 1293. The only cognizable procedural due process claim in Cornell's complaint is Count

---

**12.** Although the plaintiff is correct about the holding in *County Concrete*, and that its EPC claim is a ripe facial challenge to the 2006 amendment, the validity of the EPC claim is questionable. The court does not take up the merits of the equal protection claim because the defendants do not contest them. It is unclear from the complaint, however, what similarly situated property owners were treated differently than Cornell. *See Congregation*

*Kol Ami v. Abington Twp.*, 309 F.3d 120, 137 (3d Cir.2002) (discussing the two-step inquiry a court must make in an equal protection challenge to a zoning ordinance). *But see infra* Part IV.A.2.a (dismissing EPC claim against defendants Dena Geunes and Carolyn Williams because Cornell does not allege that they took part in the enactment of the 2006 amendment).

Three and it relates to Cornell's alleged property interest in the "obtaining and maintaining the necessary licenses and approvals from the Commonwealth of Pennsylvania." Third Am. Compl. ¶¶ 97–101.

 The Count Three procedural due process claim does not relate to the land-use decision of a local zoning board and the finality rule has no application to this claim. Rather, this cause of action involves the defendants' false statements to state agencies in order to prevent Cornell from reopening the Academy. To the extent the plaintiff has a property interest in a state license or the state licensing process, the claim is ripe. However, at oral argument and in its reply brief in further support of the Motion for Expedited Consideration and Expedited Discovery, Cornell acknowledged that it has received all of the necessary approvals from the Commonwealth of Pennsylvania to reopen the Academy. Therefore, the alleged property interest at issue has not been "deprived" and this claim will be dismissed as moot. Moreover, the only entity that could deprive Cornell of this alleged property right is the state. The defendants may have interfered with their acquisition of the licenses, but those actions fall under the course of conduct substantive due process claim.

Cornell does state in Count One that the defendants' actions deprived it of procedural due process. It is a bald assertion with no factual allegations to support it. If Cornell is suggesting that the defendants' enactment of the 2006 zoning amendment deprived it of the use of its property without adequate procedural safeguards (as the defendants appear to have interpreted this count), Cornell does not allege any violation of any provision of the notice or hearing portions of the MPC. See 53 P.S. § 10609. See also Rogin v. Bensalem Twp., 616 F.2d 680, 695 (3d Cir.1980) ("In Pennsylvania the procedure for challenging zoning ordinances substantially conforms with the general due process guidelines enunciated by the Supreme Court."). And as the defendants point out, even if Cornell did raise objections to the procedures followed in passing the 2006 amendment, the finality rule would apply and such a claim would not be ripe for adjudication. See Taylor Inv., Ltd., 983 F.2d at 1293–94. Therefore, the procedural due process claim in Count One will be dismissed.

In sum, Cornell has failed to state a § 1983 claim based on a procedural due process violation. I will grant the defendants' motions to dismiss with respect to that claim.

d. Remaining Constitutional Claims

·Although the defendants state in general terms that all of the constitutional claims are premature, they do not raise any specific ripeness issues with respect to the conspiracy-based causes of action, i.e. Counts Two and Four of the complaint. And I do not find any ripeness issues with the counts. See Felmeister v. Office of Attorney Ethics, 856 F.2d 529, 535 (3d Cir.1988) ("This court has recognized that considerations of ripeness are sufficiently important that we are required to raise the issue sua sponte even though the parties do not.").

2. Merits of Substantive
Due Process Claims

a. Facial Attack of 2006 Amendment

 In order for a federal court to interfere with a municipality's legislative action, "like invalidation of legislation for irrationality or arbitrariness," it must be shown that "the governmental body could have had no legitimate reason for its decision." County Concrete, 442 F.3d at 169 (quotations and citations omitted). Therefore, in order for a plaintiff's facial SDP

challenge to a zoning amendment to survive a motion to dismiss, it must "allege facts that would support a finding of arbitrary or irrational legislative action" by the defendants. *Id.* (quotations and citations omitted). A plaintiff can satisfy this burden by alleging that the defendants' actions in passing the amendment were aimed at it for reasons unrelated to land use planning. *See Pace Resources, Inc. v. Shrewsbury Twp.*, 808 F.2d 1023, 1035 (3d Cir.1987).

■ Accepting the averments in the complaint as true, and drawing all reasonable inferences from the alleged facts in Cornell's favor, the plaintiff satisfactorily states a claim under § 1983 for a substantive due process violation based on the defendants' enactment of the 2006 amendment. Under the facts of the complaint, Cornell alleges that the defendants have targeted the Academy ever since Cornell informed the defendants of the plans to reopen the Academy. The defendants engaged in a pattern of misconduct intended to prevent the operation of the Academy, including: (1) making false statements to state agencies; (2) not abiding by the terms of the SFA and MA; and (3) engaging in public campaign of misrepresenting the Academy's services and facility. The culmination of this animus towards Cornell and its Academy was the enactment of the 2006 amendment to the zoning ordinance. According to Cornell the amendment's sole purpose was to prevent the continued operation of the Academy in order to further the financial and real estate interests of Third Parties. A legislative action is not taken for a legitimate reason if it is done to harm the interest of a corporation and it is unrelated to land use planning.

In *County Concrete*, the Third Circuit discussed the merits of a similar facial substantive due process claim. In that case the plaintiffs charged the defendants with impeding the operation of their business through "false accusations, verbal disparagement and the imposition of illegal conditions and restrictions on their business in violation of a 1993 agreement." 442 F.3d at 170. The defendants then rezoned the plaintiffs' land "knowing that it violated [plaintiffs'] legal and contractual rights." *Id.* Looking at the complaint, the court found that the only possible motivation for the enactment of the Ordinance was "a desire to prevent [the plaintiffs] from continuing to operate ... [their] business." *Id.* As a result, the court concluded that the plaintiffs' had sufficiently pled that there was no legitimate reason for the challenged ordinance and they could go forward with their facial substantive due process claim.

■ The plaintiff's complaint does hint at a possible legitimate reason for the passage of the 2006 amendment in the discussion of the Third Parties. The complaint mentions the Borough's desire to transform the area surrounding the Academy into residential developments and the amendment was part of the planned scheme. As a result, this case may be more in line with *Pace Resources* and require this court's recognition that "the process of democratic political decision-making often entails the accommodation of competing interests, and thus necessarily produces laws that burden some groups and not others." 808 F.2d at 1035. At this point of the litigation, however, I must give the plaintiff the benefit of the doubt and allow them to proceed with discovery on this count. While Cornell's claim may ultimately be unsuccessful if the defendants are able to demonstrate a legitimate reason for the 2006 amendment to the ordinance,[13] Cornell alleges enough facts

---

13. "Typically, a legislative act will withstand

substantive due process challenge if the gov-

which state a claim that the 2006 amendment, on its face, violates substantive due process. Accordingly, the defendants Rule 12(b)(6) motions on this count will be denied as to all defendants, except defendants Dena Geunes and Carolyn Williams.

 Dena Geunes is the mayor of the Borough and Cornell alleges no facts regarding her involvement in the passage of the 2006 amendment. *See* Third Am. Compl. ¶ 57 ("The Borough Council held a meeting on August 15, 2006, during which the proposed amendment was enacted."). As for Carolyn Williams, Cornell admits that she is not a voting member of the Borough Council. *See* Docket No. 26, Pl. Consolidated Mem. Opp'n at 9 n. 5. Ms. Williams did not take part in the legislative action at issue. Therefore, I will dismiss the facial SDP claim against defendants Dena Geunes and Carolyn Williams in their individual capacity. For the same reasons, I will dismiss the facial EPC claim against defendants Dena Geunes and Carolyn Williams in their individual capacity. Regardless of the validity of the EPC claim against the other defendants, the plaintiff has failed to plead sufficient facts to hold Ms. Geunes and Ms. Williams liable for any discrimination in the *enactment* of the 2006 amendment.

### b. Course of Conduct Claim

 Initially, in order to state a due process claim under the Fourteenth Amendment based on a deprivation of property, a person must establish that he had a valid "property interest" in some benefit that was protectible under the Fourteenth Amendment at the time he was deprived of the benefit. *See Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139–40 (3d Cir.2000) ("To prevail on a non-

legislative substantive due process claim, a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." (internal quotations and citations omitted)). The Third Circuit has repeatedly held that "real property ownership" is a property interest protected by substantive due process. *Id.* at 141. Therefore, when a plaintiff landowner's substantive due process claim alleges that arbitrary governmental actions impinged upon its intended use of property, "the plaintiff has, as a matter of law, impliedly established possession of a property interest worthy of substantive due process protection." *DeBlasio v. Zoning Bd. of Adjustment,* 53 F.3d 592, 601 (3d Cir.1995). Here, Cornell's substantive due process claim alleges that the defendants arbitrarily interfered with its re-opening of the Academy, i.e., Cornell's intended use of its property. The Academy (and Cornell's operation of it) is a property interest worthy of substantive due process protection. *See Blanche Road,* 57 F.3d at 268 n. 15

 As for the merits of the course of conduct SDP claim, on facts similar to this case the Third Circuit held in *Blanche Road* that the plaintiffs' averments against the defendant Township officers were sufficient to establish a § 1983 SDP violation. The *Blanche Road* defendants allegedly engaged in a campaign of harassment and obstruction in the plaintiffs' land development efforts. *Id.* at 268. *See County Concrete,* 442 F.3d at 170. Here, Cornell's course of conduct claim directs similar allegations of obstruction against the defendants. As noted above, the defendants' made various false statements to state

ernment identifies the legitimate state interest that the legislature could rationally conclude was served by statute ...." *Nicholas v.*

*Pennsylvania State Univ.,* 227 F.3d 133, 139 (3d Cir.2000) (citations and quotations omitted).

agencies and the public, breached the terms of contracts, and passed an alleged unconstitutional amendment all in an attempt to deter Cornell in the use of its property. This improper interference with the reopening of the Academy states a substantive due process claim.[14] Therefore, the defendants Rule 12(b)(6) motions on this count will be denied.

### 3. Merits of Remaining Constitutional Claims

The defendants do not address or challenge the merits of the remaining constitutional claims, in particular the conspiracy-related claims in Count Two and Four.

### B. Count Seven's Claim Under Title II of ADA

The Borough Defendants argue that Cornell fails to state a claim under Title II of the ADA. According to the Borough Defendants, Cornell does not allege a connection between the Borough's actions and the denial of any "services, programs and activities." Also, Cornell does not claim any type of disability discrimination on the part of the Borough. Cornell disputes the Borough's arguments

and points to the licensing of the Academy and the Borough Defendants' discriminatory animus against Cornell's disabled clients.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.[15] In other words, Title II is a general prohibition against disability discrimination by public entities. In order to establish a prima facie case of disability discrimination under Title II of the ADA, a plaintiff must allege that: (1) he or she is a qualified individual with a disability within the meaning of the statute; (2) he or she is being excluded from participation in, or are being denied the benefits of the services, programs, or activities of a covered entity, or are otherwise being discriminated against by the entity; and (3) such exclusion, denial of benefits, or discrimination is due to the plaintiff's disability. *See New Directions Treatment Services v. City of Reading*, 415 F.Supp.2d 501, 513 (E.D.Pa.2005); *Disabled in Action of Pa.*

---

**14.** Under the *Blanche Road* holding, the plaintiffs' have alleged facts that satisfactorily state a claim that the defendants' actions violated substantive due process. In order to succeed on the claim the defendants' course of conduct may have to "shock the conscience" under the Third Circuit holding in *United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392 (3d Cir.2003) ("[E]xecutive action violates substantive due process only when it shocks the conscience but that meaning of this standard varies depending on the factual context."). *See* Third Am. Compl. ¶ 86 ("Defendants' actions described herein shock the conscience."). "Rules of due process are not, however, subject to mechanical application in unfamiliar territory .... [A]nd our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is

condemned as conscience-shocking." *Sacramento v. Lewis*, 523 U.S. 833, 850, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Therefore, in the absence of a fully developed factual record and under the obligation to draw all reasonable inferences in Cornell's favor, I cannot hold that it appears beyond doubt that the plaintiff can prove no set of facts that would prove the existence of conscious-shocking behavior by the defendants.

**15.** Section 12131(2) of Title II of the ADA defines "qualified individual with a disability" as an "individual with a disability who, with or without reasonable modifications ... meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."

v. Amtrak, 418 F.Supp.2d 652, 655–56 (E.D.Pa.2005); Douris v. Dougherty, 192 F.Supp.2d 358, 368 (E.D.Pa.2002).

For purposes of its motion, the Borough Defendants do not contest that Cornell has standing to bring a disability claim under Title II of the ADA[16] and that the Borough is a public entity within the meaning of the statute. The point of contention involves whether the Borough Defendants discriminated against Cornell or denied Cornell benefits of the Borough based on the disabilities of Cornell's clients. Accepting all facts pled in the complaint as true, I find that Cornell has satisfied its burden and states a claim under Title II of the ADA. The complaint avers that the Borough Defendants passed the 2006 amendment to the zoning ordinance based on a discriminatory intent to harm Cornell.

Cornell alleges that the Borough Defendants passed the 2006 amendment for the sole purpose of preventing the operation of the Academy and its services to the disabled. "The Individual Defendants and the Third Parties were improperly motivated to take the actions complained of . . . by their animus toward Cornell because of the nature of the operation to be conducted at New Morgan Academy . . . ." Third Am. Compl. ¶ 74. Although Cornell did not cite to any Third Circuit case that applied Title II's prohibitions to the zoning context (and this court did not uncover any case on its own), several circuits have held

that municipalities cannot discriminate against qualified individuals with disabilities in making zoning decisions. See Bay Area Addiction Research & Treatment, Inc. v. City of Antioch, 179 F.3d 725, 732 (9th Cir.1999) (" '[W]e decline to draw an arbitrary distinction—to prohibit public entities from discriminating against persons with disabilities in some of their activities and not in others . . . .' Although we recognize that zoning is a traditionally local activity, Congress has spoken. Accordingly, we hold that the ADA applies to zoning;" (citation omitted)); Innovative Health Sys., Inc. v. City of White Plains, 117 F.3d 37, 44 (2d Cir.1997) ("[B]oth the ADA and the Rehabilitation Act clearly encompasses zoning decisions by the City because making such decisions is a normal function of a governmental entity."). See also Musko v. McClandless, No. 94–3938, 1995 WL 262520, *5–7, 1995 U.S. Dist. LEXIS 5911, at *20–23 (E.D.Pa. May 1, 1995) (denying motion to dismiss Title II claim based on plaintiff's allegations that defendant Township "discriminated against him by 'improperly and illegally' applying criminal zoning laws and mental health laws against him"). Accordingly, for the purpose of the Borough Defendants' motion to dismiss I will accept and proceed on the theory that zoning is an activity protected under Title II.

According to the complaint, the 2006 amendment will prevent the

---

**16.** The Third Circuit has held that the ADA grants standing to entities like Cornell that have a close association with disabled persons to assert disability discrimination claims under the ADA. See Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 408 (3d Cir.2005) (holding that a proposed methadone treatment center has standing under both the ADA and the Rehabilitation Act); Innovative Health Sys., Inc. v. City of White Plains, 117 F.3d 37, 47–48 (2d Cir.1997). In fact, the enforcement provision of Title II of the ADA extends the statute's remedies to "any person

alleging discrimination on the basis of disability." 42 U.S.C. § 12133. The regulations implementing Title II further provide that "[a] public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 28 C.F.R. § 35.130(g). The Academy treats children "with histories of chemical abuse and mental and emotional impairment." See Third Am. Compl. ¶ 123.

Academy's operation at the current location. The 2006 amendment was directed at the Academy because of the Academy's students with disabilities. Therefore, Cornell has been denied the benefit of having the Borough make a zoning decision without regard to the disabilities of the Academy's students. The plaintiff states a claim cognizable under Title II of the ADA. *See Innovative Health,* 117 F.3d at 48–49.[17]

■■■ The Borough Defendants are correct that Cornell fails to state a claim under Title II based on the defendants' interference with the Academy's licensing and reopening. The complaint alleges that "by denying Cornell its rights to obtain the necessary licenses and approvals from the Commonwealth of Pennsylvania and/or utilize the New Morgan Academy facility for a lawful purpose ..., Defendants have intentionally denied Cornell equal services, programs or activities ... and have discriminated against Cornell in violation of Title II ...." Third Am. Compl. ¶ 125. It is unclear from the complaint what services, programs, or activities were denied

to the Academy students due to the Borough Defendants interfering with the relicensure. The complaint does not allege that the Borough Defendants denied Cornell any services, programs, or activities offered by the Borough. If Cornell is alleging that the Borough Defendants deprived them of the benefit of state licensing, the argument misses the mark because Cornell participated in the licensing process and acquired the necessary licenses from the state. Moreover, the defendants' alleged interference with the reopening of the Academy is due to the 2006 amendment. That conduct is encompassed in the Title II claim that survives the motion to dismiss. Finally, Cornell's general allegation that Cornell and the Academy students were subjected to discrimination by the defendants because of the students' disabilities fails to state a claim under Title II. "Section 12132 falls under Title II of the ADA, a section that prohibits discrimination against the disabled in public services. Plaintiffs have not alleged that there is a public service available to the non-disabled that defen-

17. On its face, the language of the amendment is not discriminatory to individuals with disabilities. Cornell has not reopened the Academy and it has not applied for a certificate of occupancy from the Borough under the current zoning ordinance. In other words, Cornell has not given the Borough Defendants a chance to apply the 2006 amendment to the Academy. Therefore, the ripeness of the ADA claim and Cornell's standing to bring this claim are of concern to this court. As for standing, the injury to Cornell was the enactment of the amendment itself. Cornell alleges that the amendment was directed at the Academy. In addition, the amendment's application to the Academy is not in doubt because the Academy's services fall under the definition of "Detention Facility" and the Borough represented in court papers that "Cornell's operation of New Morgan Academy as a detention facility ... is expressly prohibited." *See Turner v. City of Englewood,* 195 Fed.Appx. 346 (6th Cir.2006) (finding that the defendant's rezoning of

plaintiff's property to single family residential use effectively prohibited the property's use by an organization that proposed to operate a group home for disabled persons and "the rezoning itself is the injury about which [the plaintiff] is complaining"). In the same way, the ADA claim is ripe for my consideration because Cornell is alleging that the passage of the amendment discriminated against it and the amendment's application to the Academy is not questioned. Much like the equal protection claim above, it would be "an exercise in futility" to require Cornell to jump through the hoop of having the Borough rule that the Academy is a prohibited use under the 2006 amendment. *See County Concrete,* 442 F.3d at 167 ("This is not a case where a municipality has enacted a general ordinance and a homeowner objects to the application of the ordinance to his or her property. Here, the Township knew exactly how appellants intended to use their land and passed the Ordinance specifically tailored to prevent that use.")

dants are denying them because of their disability." *Sunrise Development Inc. v. Lower Makefield Twp.*, No. 05–2724, 2006 WL 626806, *6, 2006 U.S. Dist. LEXIS 4107, at *21 (E.D.Pa. Jan. 23, 2006). *See McSherry v. Dep't of Labor & Indus.*, No. 04–132, 2006 WL 463157, *7–12, 2006 U.S. Dist. LEXIS 10124, at *23–38 (M.D.Pa. Feb. 23, 2006). In this averment, Cornell has failed to allege that the defendants discriminated against it and the Academy students with respect to specific services, programs, or activities the Borough Defendants provide.

In sum, the only ADA Title II claim that can proceed to discovery involves the Borough Defendants' disability discrimination in the enactment of the 2006 amendment.

### C. Count Nine's Breach of Contract Claim

■ The Borough argues that Cornell fails to state a claim for breach of contract because Cornell does not adequately plead its damages and does not plead facts necessary to give rise to the Borough's obligations under the Sewage Facilities Agreement. I disagree.

■ Under Pennsylvania law, a breach of contract claim must contain three elements: " (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages." *CoreStates Bank, Nat'l Assn. v. Cutillo*, 723 A.2d 1053, 1058 (Pa.Super.Ct.1999). Here, the plaintiff has satisfied each of these elements. First, Cornell has established the existence of a contract between the parties, the Sewage Facilities Agreement, and its essential terms. *See* Third Am. Compl. ¶¶ 27, 33, 34, 38, 39. The essential terms of the Sewage Facilities Agreement included: (1) Cornell's agreement to construct the sewage facility; (2) the Borough's agreement to accept the dedication of the facility upon

its conclusion and to reimburse Cornell for the cost incurred in building the facility; and (3) the requirement that the Borough's reimbursement of Cornell would occur through quarterly payments to Cornell out of tapping fees or the Borough's net cash flow. Second, Cornell discussed in detail in its complaint the circumstances surrounding the Borough's breach of the Sewage Facilities Agreement. *See id.* ¶¶ 35–43. The conduct of the Borough constituting the breach includes its refusal to accept dedication of the sewage facility and its refusal to make quarterly payments to Cornell. Finally, Cornell states its damages in clear monetary value. *See id.* ¶ 43. Therefore, Cornell has stated a claim for breach of contract and the Borough's motion to dismiss on that claim will be denied.

### D. Count Ten's Unjust Enrichment Claim

■ The Borough argues that the plaintiff's claim for unjust enrichment must fail because the parties' relationship upon which the claim is based is founded upon a contract, the Sewage Facilities Agreement. This argument fails.

■ Cornell's claim for unjust enrichment is an appropriate alternative avenue of relief for the plaintiff to seek in the event no valid contract existed between Cornell and the Borough. "Federal rules allow pleading in the alternative. Courts have permitted plaintiffs to pursue alternative theories of recovery based both on breach of contract and unjust enrichment, even when the existence of a contract would preclude recovery under unjust enrichment." *United States v. Kensington Hosp.*, 760 F.Supp. 1120, 1135 (E.D.Pa. 1991). Under Federal Rule of Civil Procedure 8(e)(2), Cornell has exercised its right to allege alternative forms of relief "re-

gardless of consistency." FED. R. CIV. P. 8(e)(2).[18]

### E. Count Twelve's Promissory Estoppel Claim

The Borough Defendants argue that the plaintiff's promissory estoppel claim should fail because (1) Cornell fails to allege the exact promise that forms the basis of the claim, and (2) Cornell's reliance today on any 1998 promise regarding zoning is neither reasonable nor justifiable.

■ "The doctrine of promissory estoppel allows a party, under certain circumstances, to enforce a promise even though that promise is not supported by consideration." *Shoemaker v. Commonwealth Bank*, 700 A.2d 1003, 1006 (Pa.Super.Ct.1997). In order to state a claim for promissory estoppel in Pennsylvania a plaintiff must allege the following: "1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise." *Crouse v. Cyclops Industries*, 560 Pa. 394, 745 A.2d 606, 610 (2000).

■ In the complaint, Cornell satisfactorily identifies the promises that form the basis of the promissory estoppel claim.[19] Namely, Cornell alleges that the Borough represented that it would assume responsibility for the operation and maintenance of the sewage facility and that the Borough would reimburse Cornell for the cost of building the sewage facility if Cornell did in fact build the facility. The Borough should have reasonably expected Cornell to construct the sewage facility based on these promises. The sewage facility would allow Cornell to open the Academy and Cornell's responsibility for and financial exposure from the facility would be limited. At the same time, the sewage facility would benefit the Borough so Cornell could safely assume that the Borough's promise was legitimate. The second element is easily satisfied because Cornell avers that it built the sewage facility in reliance of the Borough's promises. Finally, the plaintiff has adequately stated the injustice that will result if the alleged promises are not enforced, *i.e.*, Cornell will be solely responsible for the cost of operating and building the sewage facility.

■ Cornell, however, fails to state a promissory estoppel claim based on the defendants' passing of the 1998 amendment to the Borough's zoning ordinance. When the 1998 amendment was enacted, it permitted Cornell to operate the Academy at its current location. The plaintiff does not point to any specific promise made by the defendants regarding the amendment's continued effectiveness or continued application to the Academy. While Cornell may have proposed the amendment and

---

**18.** Although for now the plaintiff may maintain its actions for unjust enrichment and breach of contract, it cannot recover under both theories. *See Robinson v. Holiday Universal, Inc.*, No. 05–5726, 2006 WL 2642323, *2, 2006 U.S. Dist. LEXIS 65082, at *8 (E.D.Pa. Sept. 11, 2006).

**19.** Even though some of the promises at issue also form the basis of the breach of contract claim, this is not fatal to the claim. As discussed in the unjust enrichment claim, a plaintiff can plead in the alternative and a promissory estoppel claim is a permissible alternative cause of action to a breach of contract claim. "Promissory estoppel and unjust enrichment may be pled in the alternative to a breach of contract claim, although the finding of a valid contract would prevent a party from recovering for either quasi-contractual theory." *Comcast Spectacor L.P. v. Chubb & Son, Inc.*, No. 05–1507, 2006 WL 2302686, *23, 2006 U.S. Dist. LEXIS 55226, at *81 (E.D.Pa. Aug. 8, 2006).

relied on the amendment's passage in its construction of the Academy, no facts have been alleged that establish any type of promise regarding the 1998 amendment. If Cornell is categorizing the 1998 amendment as a promise to allow the Academy's operation in the Industrial Zoning District, the defendants abided by that promise. The Academy functioned for two years under the 1998 amendment in the Industrial Zoning District. Cornell's claim that the defendants should be estopped from changing the interpretation or application of the 1998 amendment is better examined under the Pennsylvania principle of "vested rights." I take that up next.

### F. Count Thirteen's Zoning Estoppel Claim

Cornell alleges that it incurred costs in building the Academy in reasonable reliance on the defendants' representations that such a use was permitted under the Borough's zoning ordinance. In particular, in 2000, the defendants viewed the operation at the Academy as a "Boarding School or similar facility," as that term is defined under the zoning ordinance, and permitted its opening at the current location. Now, the defendants "accuse" the Academy of operating a "juvenile detention facility," a use not permitted under the Borough's ordinance, even though the Academy's facilities, program, and students have not changed. Cornell relies on two Pennsylvania state court cases, *Petrosky v. Zoning Hearing Board,* 485 Pa. 501, 402 A.2d 1385 (1979), and *Three Rivers*

*Youth v. Zoning Board of Adjustment,* 63 Pa.Cmwlth. 184, 437 A.2d 1064 (1981), to support the validity of the claim it entitles "zoning estoppel." Based on the holdings in those two cases, what Cornell is alleging in its complaint is that it acquired "vested rights" to operate the Academy even if the defendants now contend that it is contrary to land use laws. This claim either fails on the merits or presents a ripeness issue. This court's examination and decision regarding whether Cornell has a vested right in the Academy could result in an unnecessary intrusion into a local zoning matter. Accordingly, I will dismiss the claim against the defendants.

 A property owner can secure relief from a zoning restriction by establishing what has been termed a "vested right" to violate the restriction. "The vested rights doctrine permits a landowner to use his property without obtaining a variance. However, that doctrine applies only to cases where the applicant, in good faith reliance upon a permit issued in error, incurs significant non-recoverable costs." *Hitz v. Zoning Hearing Bd.,* 734 A.2d 60, 66 (Pa.Commw.Ct.1999). The doctrine of vested rights was fashioned to accomplish fairness when a landowner relies on a zoning permit issued by a municipality, *where the permit is subsequently determined to be invalid. Rudolph v. Zoning Hearing Bd.,* 839 A.2d 475 (Pa. Commw.Ct.2003) (emphasis added).[20]

 Based on the facts as alleged in the complaint, it appears that Cornell is

---

**20.** Pennsylvania courts look to five factors to determine whether a property owner acquired a vested right to use its property contrary to land use laws in effect:

(1) [its] due diligence in attempting to comply with the law;
(2) [its] good faith throughout the proceedings;
(3) the expenditure of substantial unrecoverable funds;

(4) the expiration without appeal of the period during which an appeal could have been taken from the issuance of the permit;
(5) the insufficiency of evidence to prove that individual property rights or the public health, safety or welfare would be adversely affected by the use of the permit.

*Petrosky v. Zoning Hearing Bd.,* 485 Pa. 501, 402 A.2d 1385, 1388 (1979).

alleging two possible scenarios to hold the defendants accountable under this claim. First, Cornell argues that the defendants are "accusing" it of operating a detention facility in violation of the 2006 zoning amendment and that is contrary to their position when the Academy first opened. At this point, the 2006 amendment to the zoning ordinance is on the Borough's books; however, Cornell received the requisite approval from the Borough to open the Academy between 1998 and 2000. The vested rights doctrine does not apply when a municipality amends its zoning ordinance and the amendment affects a prior, lawful existing use. *See generally Twp. of Haverford v. Spica,* 16 Pa.Cmwlth. 326, 328 A.2d 878 (1974) (discussing the four ways a property owner can secure relief from zoning restrictions). Rather, a vested right estoppel claim rests on an allegation that a municipality changed its position on the legality of a property owner's use of its land due to a mistake or interpretation of the existing ordinance.

▮ Second, it appears that Cornell is alleging that it had a vested right under the zoning ordinance in effect when it received its approval to construct the Academy. Such a vested right claim, however, is premature because Cornell does not allege that the defendants have definitively ruled that any permit it issued to the Academy between 1998 and 2000 is invalid.[21] Indeed, given the existence of the 2006 amendment and Cornell's representation

that the amendment bars the Academy's operation, the defendants may find it unnecessary to revoke or otherwise invalidate the Academy's initial "use" permit. Until Cornell alleges that the defendants have determined that the application of the pre–2006 ordinance to its property was a mistake, the plaintiff's vested right cause of action is not ripe for adjudication.

Ultimately, while the constitutional and ADA attacks on the enactment of the 2006 amendment are ripe, in order for this court to consider Cornell's vested right estoppel claim the defendants must deem the permit on which Cornell relied upon to build the Academy invalid. No such action has been alleged. Therefore, I will dismiss the plaintiff's zoning estoppel claim as unripe.

## V. DISCUSSION OF INDIVIDUAL DEFENDANTS' MOTION TO DISMISS

### A. Notice Pleading Requirement of the Federal Rules

The Individual Defendants dedicate a significant portion of their brief to argue that the claims against them fail to meet the basic pleading requirement of Federal Rule of Civil Procedure 8(a). The Individual Defendants ask this court to dismiss all claims against them because Cornell fails to make individualized allegations regarding the personal involvement of each separate Individual Defendant. Cornell disagrees with the

---

**21.** As noted above, "[t]he function of the ripeness doctrine is to determine whether a party has brought an action prematurely, and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." *Peachlum v. City of York,* 333 F.3d 429, 433 (3d Cir.2003). One of the considerations of a court in examining the ripeness of an issue is whether the facts of the case are sufficiently developed to provide enough information on which to decide the matter con-

clusively. *Id.* Until the 2006 amendment's status is determined and the Borough's zoning authorities prevent the Academy's operations under the pre–2006 zoning ordinance (either through revocation of its permit or refusal to allow its continued use), no "real, substantial controversy" exists between the parties that involves a "dispute definite and concrete." *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979).

Individual Defendants' position. It claims it has satisfied the liberal pleading requirements of the Federal Rules and that the Individual Defendants' arguments are better saved for after discovery. Applying the notice pleading standard, I find Cornell adequately gives the Individual Defendants notice of the claims against them and the grounds upon which the claims rest.

Under the Federal Rules of Civil Procedure, a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). This liberal standard of notice pleading applies in all civil actions other than those specifically excepted by the Federal Rules or statutory law. *See Thomas v. Independence Twp.*, 463 F.3d 285, 295 (3d Cir. 2006) (citing *Swierkiewicz v. Sorema*, 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). The Third Circuit has "recognized the Supreme Court's abrogation of a heightened pleading requirement for § 1983 actions." *Alston v. Parker*, 363 F.3d 229, 233 (3d Cir.2004). Accordingly, a plaintiff in a civil rights action does not need to plead specific facts; rather, the complaint "must only give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Independence Twp.*, 463 F.3d at 295 (quotation and citation omitted).

The Individual Defendants insistence upon specific factual allegations in the complaint misses the point of notice pleading. As the Third Circuit has previously announced, "a civil rights complaint [is] not subject to dismissal due to the absence of factual allegations." *Id.* The complaint is only required to set forth the facts necessary to provide notice of the claim and the basis for the relief sought. Should more facts be necessary to define the disputed facts and issues, the Federal Rules provide other procedural mechanisms for the that purpose, such as discovery. *Id.*

Here, Cornell has charged all of the Individual Defendants with the conduct that forms the basis of its complaint. It may very well be that only some of the Individual Defendants or none of the Individual Defendants participated in the alleged action, but " 'a plaintiff will not be thrown out of court on a Rule 12(b)(6) motion for lack of detailed facts.' " *Id.* (quoting *Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229 (3d Cir. 2005)). Discovery is intended to uncover who did what and when and it is at the summary judgment stage that the Individual Defendants can argue there is a lack of factual support to allow a claim against them to proceed. *See Swierkiewicz*, 534 U.S. at 512, 122 S.Ct. 992 ("This simplified notice pleading standard relies on liberal discovery rules ... to define disputed facts and issues and to dispose of unmeritorious claims."). The question for this court involves the validity of the stated claims. As explained throughout this memorandum, some of the alleged facts state a legitimate claim for relief and others do not; however, Cornell does not fail to include a factual predicate for any of the claims against the Individual Defendants.

In addition, "[t]he need for discovery before testing a complaint for factual sufficiency is particularly acute for civil rights plaintiffs, who often face informational disadvantages. Plaintiffs may be unaware of the identities and roles of relevant actors and ... unable to conduct a pre-trial investigation to fill in the gaps" *Alston*, 363 F.3d at 233 n. 6. Under the Federal Rules, this lack of information does not prevent the filing of a federal civil rights complaint. *See generally Hindes v. FDIC*, 137 F.3d 148, 155 (3d Cir.1998)

(permitting the naming of fictitious defendants as stand-ins until the identities can be learned through discovery).

 The Individual Defendants rely on inapposite case law to support their position. For example, *Evancho v. Fisher,* 423 F.3d 347 (3d Cir.2005), involved a § 1983 claim against a government official under a respondeat superior theory of liability. The court held that the plaintiff failed to meet the notice pleading standard of the Federal Rules because she did not aver any personal involvement by the government official in the alleged wrongdoing. Rather, the plaintiff was attempting to hold the official liable due to his position. A § 1983 cause of action cannot rest on the theory of respondeat superior. Here, the Cornell is not attempting to hold the Individual Defendants liable because of the positions they held in the Borough. Cornell has alleged that each of the Individual Defendants has participated in the alleged wrongdoing and I must accept those allegations as true. *Compare Alfaro v. E.F. Hutton & Co.,* 606 F.Supp. 1100, 1117–18 (E.D.Pa.1985) (dismissing conspiracy claim because plaintiff failed to describe the general composition of the conspiracy, some or all of its broad objectives, and defendant's general role in that conspiracy), *with* Third Am. Compl. ¶¶ 75, 76, 84, 88.

In sum, the factual allegations in the complaint that relate to the Individual Defendants satisfy the notice pleading requirements of the Federal Rules. Each of the Individual Defendants can adequately answer the complaint based on the short and plain statements as to the claims against them.

### B. Count Eight's Tortious Interference with Prospective Contractual Relationship

The Individual Defendants argue that Cornell fails to state a claim for tortious interference with prospective contracts against them because Cornell fails to allege purposeful conduct on their part and actual legal damages.

 A tortious interference claim in Pennsylvania has the following elements: (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct.

*CGB Occupational Therapy v. RHA Health Servs.,* 357 F.3d 375, 384 (3d Cir. 2004) (quoting *Crivelli v. General Motors Corp.,* 215 F.3d 386, 394 (3d Cir.2000)). Cornell has satisfied its burden for the tortious interference claim to survive a Rule 12(b)(6) motion.

First, Cornell alleges that a prospective contractual relationship existed between Cornell and its client agencies. *See* Third Am. Compl. ¶¶ 14–16, 129. Cornell operates treatment programs in partnership with government agencies throughout the United States, including in Pennsylvania, and previously offered those service at the Academy. Viewing the complaint in plaintiff's favor, Cornell adequately alleges prospective contractual relationships with its existing clients to provide services to them at the Academy. *See Dunlap v. Peco Energy Co.,* No. 96–4326, 1996 WL 617777, *5–6, 1996 U.S. Dist. LEXIS 15922, at *16–17 (E.D. Pa. Oct. 23, 1996) (finding that plaintiff's allegation that defendant had interfered with "a business expectancy in contracts ... to the energy industry" adequate to survive motion to dismiss); *Thompson Coal Co. v. Pike Coal Co.,* 488

Pa. 198, 412 A.2d 466, 471 (1979) (defining the evasive term "prospective contractual relationship" as "something less than a contractual right, something more than a mere hope"). Second, Cornell claims that the Individual Defendants acted with the purpose and intent to prevent the alleged prospective relationships from occurring. Cornell highlights some of the Individual Defendants' conduct throughout the complaint, including their interference with Cornell's attempt to obtain state licensing. *See* Third Am. Compl. ¶¶ 52–56, 61, 77, 83–85, 87–89. Third, Cornell claims that the defendants acted without justification or excuse. *See id.* ¶ 130. Finally, Cornell alleges that it has suffered damages as a result of the defendants' intentional interference with its prospective contractual relationships. *See id.* ¶ 131.

Although discovery may unveil that no prospective contractual relationship existed between Cornell and the agencies or that Cornell suffered no actual legal damages as a result of the defendants' alleged actions, in consideration of a motion to dismiss I must accept all factual allegations of the complaint as true. Thus, Cornell states a claim against the Individual Defendants for tortious interference with prospective contractual relationships.

## C. Count Eleven's Defamation Claim

■ The Individual Defendants argue that the plaintiff fails to plead a defamation claim against them. In particular, Cornell fails to allege that the Individual Defendants made any defamatory statements and Cornell fails to allege any "special harm." Viewing the complaint in Cornell's favor, I find Cornell has sufficiently pled its defamation claim against the Individual Defendants.

■ In order to state a claim for defamation in Pennsylvania, a plaintiff must satisfy the requirements of 42 Pa. Cons.Stat. § 8343:

> In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:
>
> (1) The defamatory character of the communication. (2) Its publication by the defendant. (3) Its application to the plaintiff. (4) The understanding by the recipient of its defamatory meaning. (5) The understanding by the recipient of it as intended to be applied to the plaintiff. (6) Special harm resulting to the plaintiff from its publication. (7) Abuse of a conditionally privileged occasion.

*Id.* A statement is defamatory if it "tends so to harm the reputation of another as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her." *U.S. Healthcare v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 923 (3d Cir. 1990). It is for the court to determine whether the statement at issue is defamatory. As for the "special harm" requirement, a plaintiff must plead "a specific monetary or out-of-pocket loss as a result of the defamation." *Synygy, Inc. v. Scott–Levin, Inc.*, 51 F.Supp.2d 570, 580 (E.D.Pa.1999). The special harm element is eliminated, however, where the words constitute defamation per se. Defamation per se can be either " 'words imputing (1) criminal offense, (2) loathsome disease, (3) business misconduct, or (4) serious sexual misconduct.' " *Id.* (quoting *Clemente v. Espinosa*, 749 F.Supp. 672, 677 (E.D.Pa. 1990)). *But see Synygy, Inc.*, 51 F.Supp.2d at 581 n. 9 (questioning the applicability of defamation per se to corporations).

Cornell's defamation claim is based upon the letter sent by the special counsel to the Borough to Pennsylvania state agencies in August 2006. The letter to the Pennsylvania DPW and Department of Education

contained false statements about the Academy's operation and Cornell's adherence to the law. For the purposes of this motion, I find that such a communication is defamatory to Cornell because it harms its reputation with the Commonwealth of Pennsylvania, an entity that must license the Academy based upon its facilities and services. Cornell alleges in the complaint that the letter was sent by the Borough or its agents and only at the behest, on behalf of, or as the agent of the Individual Defendants. *See* Third Am. Compl. ¶¶ 61, 84, 140–46. At this point in the case, without knowing who authorized the letter, I must accept the plaintiff's allegations that all of the Individual Defendants were responsible for the defamatory statements about Cornell. The Individual Defendants can admit or deny a role in the drafting of the communication. Those arguments, however, cannot be considered at this point and should be reserved for a summary judgment motion or trial. The Individual Defendants do not dispute that the state agencies understood the content of the letter and its application to Cornell and its Academy.

The remaining issue is whether the August 2006 letter falls under the category of defamation per se because Cornell has failed to plead special harm. The only per se category that applies under the alleged facts is business misconduct. In *Synygy, Inc. v. Scott–Levin, Inc.*, the court explained what is needed to allege business misconduct:

> A statement is defamatory per se as an accusation of business misconduct if it "ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business." The statement must be more than mere general disparagement. It must be of the type that would be particularly harmful to an indi-

vidual engaged in the plaintiff's business or profession.

51 F.Supp.2d at 580 (quoting RESTATEMENT (SECOND) OF TORTS § 573 (1977)). Cornell has clearly pled business misconduct. The defendants' statements to the state included accusations that: (1) the Academy violated zoning ordinances; (2) the Academy did not operate as a school; (3) the Academy did not have a functional sewage system; and (4) the state had previously closed down the Academy. Cornell runs a facility that provides juvenile services to the state and requires licensing by the state. Such statements could have easily resulted in the state not licensing the Academy and may result in other government entities not contracting with Cornell for future business. Statements regarding the legality and functionality of a facility are "particularly harmful" to a company that operates state-licensed *juvenile* facilities. Statements about the Academy's failure to operate a school adversely affect Cornell's ability to offer and promote its product—correctional and rehabilitative services.

Accordingly, the plaintiff has sufficiently pled a defamation claim against the Individual Defendants. I will deny the Individual Defendants' motion to dismiss as to that claim.

### D. Estoppel Claims Against Individual Defendants

I have already dismissed Count Thirteen's zoning estoppel claim against the defendants as unripe. *See supra* Part IV.F. The Individual Defendants also seek to have Count Twelve's promissory estoppel claim dismissed because Cornell fails to identify any promise any of the Individual Defendants made. I agree with the Individual Defendants.

██ As I noted above, the only basis that exists for Cornell's promissory estop-

pel claim is the sewage facility agreement and the surrounding promises. *See supra* Part IV.E. In the complaint, Cornell only alleges that the Borough made the promises regarding the dedication of the facility and the reimbursement of Cornell's expenses. *See* Third Am. Compl. ¶¶ 27, 31, 33–34, 148. Cornell does not claim that any of the Individual Defendants made any of these or other promises. Accordingly, I will dismiss the promissory estoppel claim against the Individual Defendants. *See Crouse v. Cyclops Industries*, 560 Pa. 394, 745 A.2d 606, 610 (2000) (holding that the first element of a promissory estoppel claim is "the *promisor made a promise* that he should have reasonably expected to induce action" (emphasis added)).

### E. Immunity Defenses

The Individual Defendants raise three different immunity doctrines as grounds for dismissal of the claims against them. I will take up each immunity doctrine in turn.

#### 1. Legislative Immunity

▮ The Individual Defendants argue that the doctrine of absolute legislative immunity should bar the § 1983 claims brought against them in their individual capacity that center around their legislative actions. The Individual Defendants are correct. Absolute immunity prevents Cornell from bringing the EPC and SDP facial challenges to the 2006 amendment against Richard Venezia, Tressie Marroon, and Robert Williams, i.e., the voting members of the Borough Council.

▮ Cornell has sued each of the Individual Defendants in their official and personal capacity.[22] When a government

official is sued in his or her individual capacity, a plaintiff seeks to impose personal liability upon the official for actions he takes under the color of state law. *See Kentucky. v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). "The Supreme Court has recognized, however, that public officials, sued in their individual capacities, may under certain circumstances enjoy immunity from § 1983 suits." *Carver v. Foerster*, 102 F.3d 96, 99 (3d Cir.1996). One such acknowledged form of immunity is absolute legislative immunity, which attaches to those acts that are undertaken in a legislative capacity. *Id.* at 99–100. The Third Circuit has articulated a two-part test to consider whether an action is legislative for immunity purposes: "(1) the action must be 'substantively' legislative, which requires that it involve a policy-making or line-drawing decision; and (2) the action must be 'procedurally' legislative, which requires that it be undertaken through established legislative procedures." *Acierno v. Cloutier*, 40 F.3d 597, 610 (3d Cir.1994).

The Third Circuit applied the two-part test under similar circumstances in *County Concrete*. In examining the first prong of the test, the court stated that when "zoning officials are enacting or amending zoning legislation, their acts are substantively legislative." *County Concrete*, 442 F.3d at 172. More importantly, the court rejected the plaintiffs' contention that the defendants' acts were not substantively legislative because the passage of the ordinance was "discriminatorily" aimed at the plaintiffs' property. Relying on *Acierno*, the court noted: "[E]ven if the Ordinance only affected appellants' tracts of land, the Township's action was the enactment of a zoning ordinance as opposed to the en-

---

**22.** Official capacity suits against a public official generally represent another way to plead an action against the entity of which the officer is an agent. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky. v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

forcement of an already existing zoning law and, thus, the action was substantively legislative." *Id.* In much the same way, Cornell's conduct in amending the zoning ordinance in 2006 was substantially legislative.

Cornell relies on its assertion that the 2006 amendment only applied to the Academy to support its claim that the Individual Defendants' conduct in amending the ordinance was "administrative," not legislative. *But see Carver*, 102 F.3d at 100 (stating that the number of persons affected by a given decision is not dispositive in the "legislative" calculation); *see also Bogan v. Scott–Harris*, 523 U.S. 44, 55, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998). The plaintiff does not allege that the Individual Defendants were acting outside the power delegated to them under state law or that the amendment was enacted outside the appropriate zoning procedure. Therefore, under the clear holding of *County Concrete*, Cornell's argument fails and Richard Venezia, Tressie Marroon, and Robert Williams's passage of the 2006 amendment to the zoning ordinance was substantially legislative.

Under the second prong of the test to determine whether an act is "legislative" in nature, the 2006 amendment was "procedurally legislative if it was undertaken through established legislative procedures." *Acierno*, 40 F.3d at 613. Cornell does not allege that the 2006 amendment was enacted in a way contrary to "statutory procedures specified for such actions." *Id.* Therefore, I will assume for the purpose of the pending motions that no procedural irregularities existed and the second prong is satisfied.

Thus, under the Third Circuit test relied on in *County Concrete*, the enactment of the 2006 amendment was a legislative act and Richard Venezia, Tressie Marroon, and Robert Williams are entitled to absolute immunity for the act of passing the amendment. In other words, Cornell is barred from holding defendants Richard Venezia, Tressie Marroon, and Robert Williams individually liable under the facial SDP and EPC claims.[23]

 The court will not dismiss the SDP course of conduct claim against the Individual Defendants on the basis of absolute legislative immunity. Based on the factual allegations in the complaint, the actions that comprise that claim are not legislative in nature. The defendants' alleged harassment and obstruction of the reopening of the Academy did not involve the passage of an ordinance or the making of policy. The legislative process was not involved in any way. "[T]he doctrine of absolute immunity, as it pertains to local legislators, does not shield executive officials from liability for a course of conduct taken prior to and independent of legislative action, even if those officials were simultaneously members of the local legislative body that ratified the conduct." *Carver*, 102 F.3d at 102.

In sum, I will dismiss the SDP and EPC facial challenge claims against defendants Richard Venezia, Tressie Marroon, and Robert Williams. The above defendants, in their individual capacity, are immune from liability for damages under those § 1983 claims.

### 2. High Public Official Immunity

The Individual Defendants next argue that the Pennsylvania doctrine of "high

---

**23.** I dismissed the facial SDP and EPC claims against the other Individual Defendants, Dena Geunes and Carolyn Williams, in *supra* Part IV.A.2.a for failing to state a valid claim. Even if Ms. Geunes and Ms. Williams played a role in the enactment of the 2006 amendment and the dismissal above was not warranted, the facial SDP and EPC claims against them would be barred by legislative immunity.

public official" immunity bars the defamation claim and tortious interference with prospective contractual relationship claim against them. Cornell believes that the facts of the complaint do not allow the court to conclude that the Individual Defendants are entitled to high public official immunity for the state law tort claims. I agree with Cornell.

■■■■ The Pennsylvania privilege for high public officials:

> is unlimited and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction.

*Matson v. Margiotti,* 371 Pa. 188, 88 A.2d 892, 895 (1952). The doctrine of high public official immunity applies to both defamation and tortious interference claims. *See Osiris Enterprises v. Borough of Whitehall,* 877 A.2d 560, 567 (Pa. Commw.Ct.2005) (applying doctrine to defamation and economic interference claims). Therefore, the Individual Defendants are protected from the two tort claims if it is apparent from the face of the complaint that (1) they qualify as high public officials, and (2) the "allegedly actionable behavior was made in the course of their official duties." *Id.* In applying the second element to a defamation claim, Pennsylvania courts evaluate certain factors to "determine whether the statements are closely related to the official's legitimate duties: (1) the formality of the forum in which the words were spoken or published; and (2)

the relationship of the legitimate subject of governmental concern to the person seeking damages for the defamatory utterance." *Id.* at 568.

■■■■ Here, there appears to be no dispute that each of the Individual Defendants, except Carolyn Williams, would qualify as a high public official under Pennsylvania case law. *See Lindner v. Mollan,* 544 Pa. 487, 677 A.2d 1194 (1996) (holding that mayor is a high public official); *Osiris Enterprise,* 877 A.2d 560, 567 (Pa.Commw.Ct.2005) (noting that borough council members enjoy the status of high public official). Carolyn Williams's position in the Borough's government is not as clear cut. *See* Third Am. Compl. ¶ 6 (naming Ms. Williams as council member); Docket No. 26, Pl. Consolidated Mem. Opp'n at 9 n. 5 (accepting the defendants' representation that Ms. Williams is a non-voting member of the Borough Council who serves the role of recording secretary and treasurer). Therefore, discovery is needed to determine her precise role and whether she is entitled to high public official immunity.[24] As for the remaining Individual Defendants, the only issue is whether the alleged tortious interference and the alleged defamatory statements took place in the course of the Individual Defendants' official duties.

■■■■ Plaintiff's complaint alleges that the Individual Defendants made their false statement and interfered with Cornell's prospective contracts outside their government function. *See* Third Am. Compl. ¶¶ 76, 77, 81, 84. The factual basis for the claims do not prove otherwise. The tortious interference is based upon the Individual Defendants' hindrance of the state

---

**24.** As the Pennsylvania Supreme Court has stated, the "determination of whether a particular public officer is protected by absolute privilege should depend on the nature of his

duties, the importance of his office, and particularly whether or not he has policy-making functions." *Montgomery v. City of Philadelphia,* 392 Pa. 178, 140 A.2d 100, 104 (1958).

approval process. At this stage of the litigation doubts exist as to whether a mayor's or council member's duties include a role in the issuance of state licenses. And if a doubt exists, I must find for the plaintiff.

The defamation claim involves a letter sent to the state regarding zoning, sewage, and land-use issues. Under the "formality of the forum" factor, the complaint describes a non-solicited letter sent to a state agency. The statements were not made in the context of a public meeting and the letter was not published to the public. *See Osiris Enterprises,* 877 A.2d 560 (applying high public official immunity because declaration occurred during council meeting that was open to the public). The factor can only be fairly applied after discovery and the uncovering of additional information (such as, what, if anything, did the state request from the Borough, what does the state consider in issuing licenses, and how typical is it for local governing bodies to weigh in on state agency decisions). Also, much like the tortious interference claim, it is unknown what legitimate duty the mayor or the members of the borough council carried out in taking part in another government entity's affairs. While the content of the letter included subject matters clearly within the control of the Borough, the context of the communication prevents me from granting the Individual Defendants' high public official immunity at this stage of the case. *See Heller v. Fulare,* 454 F.3d 174, 180 (3d Cir.2006) ("[I]t is the content and context of the statements that must be the focus of the immunity analysis.").

This case is not similar to other cases where the court granted a defendant's motion to dismiss or preliminary objection based on high public official immunity. *See Heller,* 454 F.3d 174 (granting motion to dismiss on defamation claim because "statements were made during formal meetings and were within the ambit of the Board's oversight of the police department"); *Matta v. Burton,* 721 A.2d 1164 (Pa.Commw.Ct.1998) (granting immunity from defamation claim because school board director's letter to newspaper about school manager's handling of contracts fell within defendant's authority to oversee the administration of school district contracts). Discovery must occur before this court can adequately consider that doctrine and apply it to the defamation and tortious interference claim. Accordingly, the Individual Defendants' motion to dismiss based on high public official immunity is denied.

### 3. *Pennsylvania Government Immunity Act*

■ The Individual Defendants request the court to dismiss the following claims brought against them in their individual capacity based on the immunity available under the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. Cons.Stat. § 8541 *et seq.:* tortious interference with prospective contracts, defamation, promissory estoppel, and zoning estoppel. Cornell argues that the government immunity available under the PSTCA is inapplicable because the complaint alleges willful conduct on the part of the defendants. Since the estoppel claims have been dismissed, I will only examine whether PSTCA immunity bars the defamation claim or the tortious interference claim.[25]

25. The court assumes that Cornell is only pursuing the defamation and tortious interference claims against the Individual Defendants in their personal capacity, based on the arguments in the plaintiff's briefs and Cornell's

voluntary dismissal of those two state law claims against the Borough Defendants. *See Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (stating that suits against municipal employees acting in their

Under the PSTCA, public employees sued in their personal capacity do not enjoy immunity for malicious or willful conduct. 42 Pa. Cons.Stat. § 8550. Section 8550 is an exception to the general immunity provided government employees under the PSTCA. When "it is judicially determined that the act of the employee caused the injury and that such act constituted ... actual malice or willful misconduct," PSTCA immunity does not apply. *Id.* The Pennsylvania Supreme Court has held that "willful conduct" "means that the actor desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue." *Evans v. Philadelphia Transp. Co.*, 418 Pa. 567, 212 A.2d 440, 443 (1965). Willful conduct is synonymous with intentional tort. *Renk v. City of Pittsburgh*, 537 Pa. 68, 641 A.2d 289, 291 (1994) (citing *King v. Breach*, 115 Pa.Cmwlth. 355, 540 A.2d 976 (Pa.Commw.Ct.1988)).

Cornell alleges at several points in its complaint that the Individual Defendants acted willfully and maliciously in defaming Cornell and interfering with Cornell's prospective business relationships. For example, Cornell claims that "the Individual Defendants ... acted at all times without a good faith belief in the legality of their acts [described in the complaint], but rather willfully and with full awareness of the unlawful nature of their actions for the purpose of and with the intent to drive Cornell out of the Borough." Third Am. Compl. ¶ 83. Further, the plaintiff alleges that the Individual Defendants "intentionally, maliciously and with unlawful motive interfered with the prospective relationships between Cornell and its client agencies ...." *Id.* ¶ 129. Finally, in the defa-

mation count, the complaint states that the "statements were made irresponsibly, maliciously and/or in a grossly negligent manner, for the sole purpose of injuring the business and reputation of Cornell ...." *Id.* ¶ 145. *See Ford .v. Johnson*, 899 F.Supp. 227, 234 (W.D.Pa.1995) (denying defendants' motion to dismiss on PSTCA immunity grounds because the plaintiff alleged "gross negligence" which is defined in Pennsylvania statute 42 Pa. Cons.Stat. § 8336 as "reckless, willful or wanton misconduct"). Taken as true, the Individual Defendants were motivated by actual malice and their actions in question were taken in order to bring about the results and alleged injuries that followed. Thus, the averments in the complaint are sufficient to establish willful misconduct and actual malice on the part of the Individual Defendants. *See Young v. Bethlehem Area Vo–Tech Sch.*, No. 06–2285, 2007 WL 674617, *10–11, 2007 U.S. Dist. LEXIS 13531, at *32–33 (E.D.Pa. Feb. 28, 2007); *Walker v. N. Wales Borough*, 395 F.Supp.2d 219, 230–31 (E.D.Pa.2005). As a result, the exception to PSTCA immunity applies to the defamation and tortious interference claims against the Individual Defendants.

The Individual Defendants' motion to dismiss the defamation and tortious interference claims (in their personal capacity) on grounds that they are shielded under the PSTCA will be denied.

## VI. MOTION FOR EXPEDITED DISCOVERY AND EXPEDITED CONSIDERATION

Cornell filed a Motion for Expedited Discovery and Expedited Consideration on September 15, 2006. *See* Docket No. 2. After consideration of the plaintiff's claims,

---

official capacities are "treated as claims against the municipal entities that employ these individuals"). In the event Cornell is seeking to hold the Individual Defendants liable in their official capacity for defamation

and tortious interference, the PSTCA shields them from liability. *See* 42 PA. CONS.STAT. §§ 8541–42; *Walker v. N. Wales Borough*, 395 F.Supp.2d 219, 230–31 (E.D.Pa.2005).

the defendants' filed motions, and the number of factual issues underlying the declaratory relief requests, and in light of the importance of developing a complete factual record to ensure that this court does not intrude into the local zoning process, I declined to grant the motion and at this point of the case it is denied as moot. *See generally Sacramento v. Lewis,* 523 U.S. 833, 850, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) ("[J]udicial concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking."); *Sameric Corp. v. City of Philadelphia,* 142 F.3d 582, 598 (3d Cir.1998) ("Land-use decisions concern a variety of interests and persons, and local authorities are in a better position than the courts to assess the burdens and benefits of those varying interests.") The court will schedule a Rule 16 conference with the parties in the near future and discovery will be completed based·on a normal timetable.

## VII. CONCLUSION

Each of Cornell's § 1983 constitutional claims is ripe for this court's consideration. In consideration of the merits of the constitutional claims against the defendants, I find that Cornell adequately states a claim for relief in its substantive due process facial challenge to the 2006 amendment. However, defendants Dena Geunes and Carolyn Williams will be dismissed from the substantive due process and equal protection facial challenge claims. Cornell does not allege that the two defendants played any role in the enactment of the 2006 amendment. Also, Cornell adequately states a valid substantive due process course of conduct claim against the defendants, but fails to state a valid claim based upon a violation of its procedural due process rights. Thus, I will deny the motions

to dismiss as to the former claim and grant the motions as to the latter.

With respect to the remainder of the claims against the Borough Defendants, I will deny the Borough Defendants motion to dismiss with respect to the following: (1) Count Seven's Title II ADA claim based on the Borough's zoning activities; (2) Count Nine's breach of contract claim; (3) Count Ten's unjust enrichment claim; and (4) Count Twelve's promissory estoppel claim based on the promises surrounding the construction, operation, and payment of the sewage facility. I will grant the Borough Defendants' motion to dismiss on Count Thirteen's zoning estoppel claim as the claim is not ripe for consideration.

As for the Individual Defendants' motion to dismiss, I find that Cornell's complaint adheres to the notice pleading requirements of Rule 8(a). I will grant their motion with respect to both estoppel claims. Count Twelve's promissory estoppel claim fails to aver that any of the Individual Defendants made a promise and, as noted above, Count Thirteen's zoning estoppel claim is unripe. I also find that legislative immunity bars the substantive due process and equal protection facial challenge claims against defendants Richard Venezia, Tressie Marroon, and Robert Williams. Finally, I will deny the motion to dismiss with respect to Count Eight's tortious interference with prospective contractual relationships claim and Count Eleven's defamation claim. Cornell's complaint states a claim for both torts and, at this juncture of the case, I cannot rule on the applicability of Pennsylvania's high public official immunity or the immunity available under the Pennsylvania Political Subdivision Tort Claims Act.

An appropriate Order follows.

### *ORDER*

**AND NOW,** this 31st day of May, 2007, upon consideration of the Borough of New

Morgan and the Borough of New Morgan Council's Motion to Dismiss (Docket No. 21), and the responses thereto, it is hereby **ORDERED** that the motion is **GRANTED in part and DENIED in part,** as follows:

(1) The § 1983 constitutional claims are ripe for this court's consideration.

(2) I will deny the motion with respect to: (a) the substantive due process facial challenge to the 2006 amendment; (b) substantive due process course of conduct claim; (c) Count Seven's Title II ADA claim based on the Borough's zoning activities; (d) Count Nine's breach of contract claim; (e) Count Ten's unjust enrichment claim; and (f) Count Twelve's promissory estoppel claim based on the promises surrounding the construction, operation, and payment of the sewage facility.

(3) I will grant the motion as to the following claims: (a) the procedural due process claim; and (b) Count Thirteen's zoning estoppel claim.

It is **FURTHER ORDERED** that upon consideration of Richard Venezia, Tressie Marroon, Robert Williams, Carolyn William, and Dena Geunes's Motion to Dismiss (Docket No. 20), and the responses thereto, that the motion is **GRANTED in part and DENIED in part,** as follows:

(1) The complaint satisfies the notice pleading requirements of Federal Rule of Civil Procedure 8(a).

(2) The § 1983 constitutional claims are ripe for this court's consideration.

(3) I will deny the motion with respect to: (a) the substantive due process course of conduct claim; (b) Count Eight's tortious interference with prospective contractual relationships claim; and (c) Count Eleven's defamation claim.

(4) I will grant the motion with regards to: (a) the substantive due process facial challenge to the 2006 amendment; (b) the equal protection facial challenge to the 2006 amendment; (c) the procedural due process claim; (d) Count Twelve's promissory estoppel claim; and (e) Count Thirteen's zoning estoppel claim.

It is **FURTHER ORDERED** that defendants' initial motions to dismiss (Docket Nos. 11 and 12) and plaintiff's motions related to expedited discovery and consideration (Docket Nos. 2 and 9) are **DENIED as moot.**